TELLES v. LYNDE et al.

(District Court, N. D. California. October 22, 1891.)

1. WHO ARE SEAMEN—WAGES—EXEMPTION FROM ATTACHMENT.
   One who ships for a fishing voyage, to be paid at the rate of $25 for each 1,000 fish caught by him and $1.50 per day for unloading, is not a "seaman," within the meaning of Rev. St. U. S. § 4536, which provides that no wages due or accruing to any seaman shall be subject to attachment or arrestment, etc., since this section occurs under title 53, which treats of "merchant seamen," and merchant seamen have been distinguished from "fishermen" in all the legislation of congress.

2. SAME—EXEMPTION OF WAGES.
   Rev. St. U. S. § 4536, providing that "no wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment," does not apply where an execution, issued in an action against a person claiming to be a seaman, is served upon the owners of the vessel, and payment is enforced from them by an order made in proceedings supplemental to execution.

3. GARNISHMENT—DEBT NOT DUE.
   When the wages of a fisherman are to be paid "within" 30 days after the arrival of the vessel in port, they are not exempt from garnishment after arrival and before the expiration of that time.

4. SAME—IRREGULARITIES IN PROCEEDINGS.
   Where the wages of a fisherman have been garnished by a justice court for a debt justly due, and payment compelled from the vessel-owners by proceedings in aid of execution, which they have in good faith resisted by all proper means, a court of admiralty will not compel them to again pay the amount to the fisherman, although the proceedings in the justice court were reversible for error.

In Admiralty. Libel for wages.
Wm. Hoff Cook, for libelant.
Andros & Frank, for respondents.

MORROW, J. The libelant shipped on the barkentine J. A. Falkenburg, at San Francisco, on the 25th day of April, 1891, as a fisherman, for a voyage to Behring sea and return, at the wages or rate of $25 for

each 1,000 fish caught by him and $1.50 per day for unloading; the wages to be paid within 30 days after the arrival of the vessel on her return to San Francisco. The voyage was made and completed by the return of the vessel to San Francisco on the 1st day of September, 1891. The vessel having sailed on another voyage, the libelant brings this action against the owners, W. C. Lynde and W. C. Hough, to recover as wages the sum of $175.15. The respondents, in their answer, admit the material allegations of the libel, but aver that "on the 19th day of September, 1891, a judgment was rendered in the justice's court in and for the city and county of San Francisco against the said libelant in a cause wherein Raulino V. Silviera was plaintiff, for the sum of one hundred and seventeen dollars and fifty cents and accruing costs, amounting to the further sum of seven dollars and seventy-five cents, which said judgment was then and there duly made and entered. That thereafter, to-wit, on the said 19th day of September, 1891, these respondents were duly served with an execution in said cause. That thereupon said respondents refused to pay said judgment under said execution on the ground that no money was due from said respondents to this libelant. That thereafter, on the 22d day of September, 1891, said respondents were served with an order issued out of said court for examination supplemental to execution in said cause, and that thereupon, said respondents appearing before said court under said order, and having refused to pay over any part of said money under said judgment, the said court then and there duly made an order commanding these respondents to pay to the plaintiff in said cause the said sum of one hundred and seventeen dollars and fifty cents, and the further sum of seven dollars and seventy-five cents accruing costs, which said sum these respondents then and there did pay to said Raulino V. Silviera, under said order of said court." Respondents further allege that "on the 2d day of October, 1891, and before the filing of the libel herein, the said respondents tendered to the said libelant the difference between the amount paid into the said justice's court under said order aforesaid, and the said one hundred and seventy-five dollars and fifteen cents, to-wit, the sum of fifty dollars and twenty-five cents, in full payment of his said wages, which said amount the said libelant then and there refused, and still continues to refuse, to accept; whereupon, and before the filing of the answer herein, the said sum so tendered was deposited by said respondents in the registry of this court, to abide the order or decree to be made herein." To this answer the libelant has excepted, on the ground that it is insufficient for the following reasons:

"That said paragraph does not state any defense to libelant's libel, as it sets up a payment before any money was due to libelant under the shipping contract alleged and admitted by respondent's answer; and, further, that the wages sued for are exempt from attachment and execution. That in the case of Carlos A. Telles against the barkentine J. A. Falkenburg, in this court, wherein the respondents were claimants, this court sustained the contention of said claimants that no money would be due on said shipping articles until 30 days after the arrival of said vessel, and dismissed said libel, and these respondents are bound by said judgment."

The first question is as to the sufficiency of the answer, and, as the case has been submitted upon an agreed statement of facts, it will be convenient to refer, briefly, to prior proceedings in this controversy. It appears from the records in this court that on the 3d day of September, 1891, and after the commencement of the action in the justice's court by Silviera against the libelant, the latter brought an action *in rem* in this court against the barkentine J. A. Falkenburg for the same cause of action as in this libel set forth against the owners of the vessel. In that case the claimants answered on the 17th day of September, 1891, setting forth that on the 2d day of September, 1891, they had been served, by the sheriff of the city and county of San Francisco, with a process of attachment issued out of the justice's court in the case of Silviera against the libelant against the property of said libelant, garnishing all the money then in their hands and due to the said libelant; that in and by said process of attachment the claimants were commanded by the said court to hold any and all moneys that might be due from them to the said libelant, subject to the further order of said court. On the 24th day of September, 1891, claimants amended their answer, setting up a judgment rendered in the justice's court on the 19th day of September, 1891, in favor of Silviera and against libelant; the service on claimants of an execution upon said judgment; and the proceedings supplementary to execution, as set forth in the answer by the same parties as respondents in this case. The cause was duly heard on the 24th day of September, 1891, and thereafter the court, (Judge HAWLEY,) on the 28th day of September, 1891, dismissed the libel without prejudice, upon the ground that the action was prematurely brought. The position of the libelant, in the present case, may be stated as follows: *First.* That he was not a party to the garnishment and proceedings supplementary to execution in the justice's court, and therefore not bound by such proceedings. *Second.* That the garnishment and proceedings supplementary to execution were in the nature of proceedings *in rem*, and the court did not acquire jurisdiction over libelant's wages in the hands of respondents, because (1) seamen's wages are exempt from attachment and execution; (2) the wages were not due at the time they were paid over to the plaintiff under the proceedings supplementary to execution in the justice's court. The libelant was a party to the judgment in the justice's court, and the judgment has been paid by respondents under compulsory proceedings, and they now claim a credit, in this action, for the amount so paid. Are they entitled to such credit? In Black on Judgments (section 593) the law is stated as follows:

"It is universally agreed that when a judgment is recovered against the garnishee by the attaching creditor and paid, such judgment may be pleaded by the garnishee in bar of any action against him for the same debt, brought by the principal defendant, up to the amount which the garnishee has paid."

In a note in 8 Amer. & Eng. Enc. Law, p. 1252, the law is stated to be: "Payment of the judgment protects the garnishee, even when the judgment is subsequently reversed on appeal for irregularities;" citing *Duncan* v. *Ware*, 5 Stew. & P. 119; *Gunn* v. *Howell*, 35 Ala. 144; *Atch-*

*eson* v. *Smith*, 3 B. Mon. 502; *Webb* v. *Miller*, 24 Miss. 638; *Houston* v. *Wolcott*, 1 Iowa, 86.

The precise question now under consideration was involved in the *Case of the City of New Bedford*, in the southern district of New York, 20 Fed. Rep. 61. The court (BROWN, J.) held that it—

"Ought not to disregard accomplished facts, or the equities which grow out of them. It may disregard assignments of wages by seamen, or even judgments, so long as they are executory merely. But here the payment by the defendants has been already made, and made compulsory, under a power which they could not resist. The libelant's debt to Blake has been thereby extinguished. The debt was a just one. No circumstances appear or are suggested showing that it was not one which the libelant was bound in conscience to pay, and one which he would presumably have paid out of these wages if received by him. He has had the full benefit of the defendants' payment of it. These are all accomplished facts; and, in the absence of any proved circumstances of hardship to the libelant, there is manifestly no equity in his claim to be paid in substance a second time; and such a decree would inflict manifest wrong upon the defendants. From this point of view the court might determine quite otherwise if there were any fraud, injustice, or oppression, either in the inception or in the payment of the debt to Blake; or if it absorbed the whole of the libelant's wages, or so much of it as would distress him to do without. But there is no suggestion of any such circumstances. Without reference, therefore, to the result, in a strictly legal point of view, of the assumed want of jurisdiction in the Massachusetts court to attach these wages, I think a court of admiralty, acting on equitable principles, could not award the libelant, under such circumstances, *ex æquo et bono*, the wages already paid compulsorily for his use. The defendant has manifestly the better equity. Per KENT, C. J., in *Embree* v. *Hanna*, 5 Johns. 101–103."

The reasons given for allowing the defendants credit for the amount paid by them under the execution against the libelant in the case just cited are sufficient to justify this court in allowing the respondents credit, in this case, for the amount paid by them on the judgment against the libelant in the justice's court, and I prefer to place my determination of the question upon such grounds, rather than upon the strictly legal rights urged in support of respondents' claim. In doing so, I do not overlook the suggestion made at the hearing by the proctor for the libelant, that the proceedings disclosed evidence of collusion between respondents and plaintiff in the justice's court case. I have examined the proceedings carefully, and I do not discover any evidence of collusion between the parties, but, on the contrary, I find that the respondents resisted the plaintiff in that case at every step. To the writ of attachment they did not admit that they had any money in their hands due to the libelant. When the writ of execution was served upon them they made the claim that nothing was due libelant at that time. In response to the proceedings supplementary to execution it appears from the statement of facts "that the said respondents appeared upon said order of examination *in propria persona*, and then and there objected to paying over the said money, and testified in said court that there was no money due from them to the said libelant, and would not be due until the 30th of September." I do not see what more respondents could have done to protect the rights of libelant and secure to him the wages that were

about to become due. That they were compelled to pay the judgment in that case does not appear to have been by reason of any act or omission on their part.

We come now to the question of jurisdiction of the justice's court over libelant's wages in the hands of the respondents. Section 4536 of the Revised Statutes provides:

"No wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court; and every payment of wages to a seaman or apprentice shall be valid in law, notwithstanding any previous sale or assignment of wages, or of any attachment, incumbrance, or arrestment thereon; and no assignment or sale of wages or of salvage, made prior to the accruing thereof, shall bind the party making the same, except such advance securities as are authorized by this title."

The question has been raised as to whether the libelant was a seaman within the meaning of this section. In the case of *The Ocean Spray,* 4 Sawy. 105, it was held that sealors engaged in taking fur-seal on the north-west coast were mariners, and entitled to a lien on the vessel for their wages; but that was a broader question than the one now under consideration. The question here is the claim of the libelant to the exemption of his wages from attachment and execution under the provisions of section 4536 of the Revised Statutes. He shipped as a fisherman on a voyage to Behring sea and return, and, instead of being paid monthly wages, he was to receive compensation for his services at the rate of $25 for each 1,000 fish caught by him. In the case of *The Cornelia M. Kingsland,* 25 Fed. Rep. 858, the court, in discussing the distinction between seamen and fishermen, said:

"Fishermen, in the Revised Statutes, and in all our legislation from the inception of the government downwards, have been treated distinctly under the name of 'fishermen,' never under the name of 'seamen.' Seamen in the merchant service have been the subject of numerous acts of congress, and fishermen and the fisheries the subjects of numerous other acts. They are always treated of under these distinctive designations. Sections 4392 and 4393 recognize the distinction in express terms. These two classes of mariners have never been confounded in legislation. In the Revised Statutes fishermen and the fisheries are treated of under title 51. Title 53 treats of 'merchant seamen.' Section 4523 is found in the title relating to merchant seamen. Fishermen, although not necessarily seamen, are in practice usually seamen also, inasmuch as they usually perform seamen's duties, so far as may be necessary, upon the particular voyage; but the object of the voyage is to catch a fare of fish. Their labors as seamen are incidental to this main purpose. Some of the fishermen may be employed to catch fish only; others to fish and man the ship. The latter are seamen, and more. As seamen, they are indeed entitled to the benefits of the marine law applicable to seamen; such as the right to be cured at the ship's expense. *Knight* v. *Parsons,* 1 Spr. 279. But the question here is not as to the rights of fishermen as seamen under the marine laws, but as to the intention of this particular section of the statute, which is found, not in the title relating to 'fishermen,' but in the title relating to 'merchant seamen.' "

The distinction here clearly pointed out leads me to the conclusion that the libelant was not a seaman, within the meaning of section 4536 of the Revised Statutes. But there is still another limitation to the ex-

emption provided in this section, which is also conclusive of libel-ant's claim in this case. The section provides that "no wages due or ac-cruing to any seaman or apprentice shall be subject to attachment or ar-restment." The libelant's wages were not taken from the respondents under attachment or arrestment, but under execution, and the proceed-ings supplementary thereto. The law does not exempt seamen's wages from such process, and the court therefore had jurisdiction to make the appropriation it did in satisfaction of the judgment against libelant.

The libelant claims further that the wages were not due at the time they were paid over by the respondents to the plaintiff under the pro-ceedings supplementary to execution in the justice's court. The con-tract was that the wages were to be settled within 30 days after arrival. The voyage terminated with the arrival of the vessel at San Francisco. The contract did not absolutely postpone the settlement for a period of 30 days after such arrival, but, for the benefit of those employed, it placed a limitation of 30 days within which time the settlement was to be made. The wages were sure to become due and payable within 30 days after the arrival of the vessel. There was no contingency involved that could defeat the debt. "It is now a very generally recognized rule of law that a debt existing in favor of the garnishee, not due at the serv-ice of the writ, but which is sure to become due at a future period, may be reached both under execution and attachment. * * * If * * * the person performing services is entitled to compensation free from any contingency, though the time for payment has not arrived, there is an absolute debt, and, consequently, a proper subject for garnishment." Freem. Ex'ns, § 165. This being the law, the justice's court obtained jurisdiction over libelant's wages in the hands of respondents, notwith-standing the objection that they were not due at the time of the appro-priation.

Proctor for libelant claimed at the hearing that the amount paid as accruing costs was excessive. The amount charged is $7.75. Respond-ents have filed a memorandum, from which it appears that the amount actually paid was $8, or 25 cents more than was charged. It is difficult to determine from the state statute what costs were legally chargeable in the case. In some trifling particulars the bill appears excessive, but this is not a jurisdictional fault. *Bigelow* v. *Barre*, 30 Mich. 1. Having de-termined that the libelant was equitably, if not legally, bound by the judgment and the proceedings supplementary to execution, the question of costs is not open for examination. It follows, therefore, that payment of $117.50, and accruing costs, $7.75, made by respondents, must be allowed as credits in their favor, and that the tender made at the time the answer was filed was sufficient. The libelant is entitled to the sum of $50.25 deposited in court, and a decree will be entered accordingly.