[No. 9457.   Department One.   August 1, 1911.]

JAMES M. GLOVER, *Respondent*, v. RICHARDSON & ELMER
COMPANY, *Appellant*.[1]

MASTER AND SERVANT—RELATION—INDEPENDENT CONTRACTORS—EVI-
DENCE—QUESTION FOR JURY.   Whether a teamster, employed by de-
fendant with his team and wagon by the month to haul lumber and
assist in other work, subject at all times to the control of de-
fendant's foreman, is the servant of the defendant or an independent
contractor, rendering defendant liable for his negligent injury of a
third person in the course of the employment, is a question for
the jury.

MUNICIPAL CORPORATIONS—USE OF STREETS—NEGLIGENCE IN LOAD-
ING WAGON—EVIDENCE—SUFFICIENCY.   There is sufficient evidence

[1]Reported in 116 Pac. 861.

of negligence in overloading a wagon, one of the rear wheels of which collapsed in a street and injured a person in the street, where it appears that it was loaded with flooring, estimated to weigh about 2,700 lbs., which protruded back eight feet, throwing the principal weight on the rear wheels, the wagon being built to carry two tons.

MASTER AND SERVANT—INJURY TO THIRD PERSON—LIABILITY OF MASTER. One who hires a teamster with his team and wagon is as much responsible for the safety of the wagon as though he hired a man to drive his own wagon, so far as third persons are concerned.

Appeal from a judgment of the superior court for King county, Ronald, J., entered November 4, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained through the collapse of a wagon hired by the defendant.    Affirmed.

*McClure & McClure* and *Edwin C. Ewing,* for appellant, contended, among other things, that the admitted facts made the driver an independent contractor, and required a directed verdict for the defendant.    *Burns v. Michigan Paint Co.,* 152 Mich. 613, 116 N. W. 182, 16 L. R. A. (N. S.) 816; *De Forrest v. Wright,* 2 Mich. 368; *Jahn's Adm'r v. McKnight & Co.,* 117 Ky. 655, 78 S. W. 862; *Kueckel v. Ryder,* 54 App. Div. 252, 66 N. Y. Supp. 522; *Bryson v. Philadelphia Brewing Co.,* 209 Pa. 40, 57 Atl. 1105; *Wood v. Cobb,* 13 Allen 58; *Chicago Hydraulic Press Brick Co. v. Campbell,* 116 Ill. App. 322; *Foster v. Wadsworth-Howland Co.,* 116 Ill. 514, 48 N. E. 163.    Where one renders service for another in the course of an occupation, representing the will of his employer only as to the result, and not as to the means by which it is accomplished, he is an independent contractor.    *Boyle v. Great Northern R. Co.,* 13 Wash. 383, 43 Pac. 344; *Ziebell v. Eclipse Lumber Co.,* 33 Wash. 591, 74 Pac. 680; *Engler v. Seattle,* 40 Wash. 72, 82 Pac. 136; *Larson v. American Bridge Co.,* 4 Wash. 224, 82 Pac. 294, 111 Am. St. 904; *Miller v. Moran Bros. Co.,* 39 Wash. 631, 81 Pac. 1089, 1 L. R. A. (N. S.) 283; *Harrison v. Collins,* 86 Pa. St. 153, 27 Am. Rep. 699; *Carter v. Berlin Mills Co.,*

58 N. H. 52, 42 Am. Rep. 572; *Fink v. Missouri Furnace Co.*, 82 Mo. 276, 52 Am. Rep. 376; *Wabash, St. L. & P. R. Co. v. Farver*, 111 Ind. 195, 12 N. E. 296, 60 Am. Rep. 696; *Karl v. Juniata County*, 206 Pa. 633, 56 Atl. 78; *Knowlton v. Holt*, 67 N. H. 155, 30 Atl. 346. The general rule is that where there is no substantial contradiction in the evidence, it is the duty of the court to take the case from the jury and render judgment as the facts require. *Wadhams v. Page*, 6 Wash. 103, 32 Pac. 1068; *Squires v. Zumwalt*, 12 Wash. 241, 40 Pac. 986; *Underwood v. Stack*, 15 Wash. 497, 46 Pac. 1031; *Creagh v. Equitable Life Assur. Society*, 19 Wash. 108, 52 Pac. 526; *Pacific Nat. Bank v. Aetna Indemnity Co.*, 33 Wash. 428, 74 Pac. 590; *Meyers v. Syndicate Heat & Power Co.*, 47 Wash. 48, 91 Pac. 549; *Johnson v. Great Northern Lumber Co.*, 48 Wash. 325, 93 Pac. 516.

*Brightman & Tennant*, for respondent.

FULLERTON, J.—On July 5, 1910, the respondent, then in the employment of the Seattle-Tacoma Power Company as a lineman, was working in an alley in the city of Seattle, stringing new light lines to take the place of old ones that had been broken and torn down during the time of a fire occurring a few days before. Some days before, a tool box containing working tools and fixtures had been brought into the alley and deposited by the side of the way. During the course of the day named, the respondent was searching for some tool or fixture in the box, when a team hitched to a wagon loaded with lumber was driven into the alley by one A. J. Taylor. As the wagon passed the place where the respondent was at work the hind wheel on the side on which the respondent was working suddenly gave way, causing the load to fall against the respondent, pinning him to the ground and severely injuring him. He thereupon brought the present action, alleging that the team and wagon belonged to the appellant; that it was driven by appellant's servant in the

transaction of the business of appellant; that the wagon was weak, defective and overloaded, and broke and collapsed because thereof.

The appellant answered by a general denial, and certain affirmative pleas not necessary to especially notice. The trial developed the fact that the team and wagon was owned by Taylor, the driver; that the appellant was engaged in the business of manufacturing and selling sashes, doors, and finishing lumber, and had employed Taylor with his wagon and team early in the year to do their hauling, paying him therefor a wage of $140 per month for a certain period and $150 per month thereafter. Taylor's duties consisted of hauling rough lumber from the depots and wharves to the appellant's factory, and finished products therefrom to the consumers. The wagon bore on its sides signs on which were painted the name of the appellant, its business address, and the words, "Sash, Doors, Finishing." Taylor was subject at all times to the directions of the appellant's foreman, and was assisted by other employees of the appellant in loading and unloading when at the factory. When there was no hauling to do, which event seems to have occurred only occasionally, he assisted other workmen in their duties around the factory. Taylor was expected to work nine hours a day, to feed and care for his own team, keep his wagon in repair, and was at liberty to determine the size of his load, and choose his own route in going and coming from places between which he was directed to haul.

As to the cause of the collapse of the wheel, it was shown on the part of the respondent that the wagon was loaded in such a way as to cause the principal part of the weight to fall on the hind wheels; that the place where the wheel gave way was comparatively smooth, and that there was no other cause for the wheel giving way than excessive weight on the wagon. On the other side, it was shown that the wagon was loaded with flooring at the time it collapsed, which was estimated to weigh less than 2,700 pounds; that the wagon was

intended to carry with safety a load up to two tons; and that the wheel that collapsed had been examined by a wagon maker not many weeks prior to the accident, and pronounced in good repair.   The wheel, after its collapse, showed fresh breaks and no concealed defects.

At the conclusion of the case, the appellant challenged the sufficiency of the evidence to justify a verdict for the respondent; arguing, first, that the evidence showed Taylor to be an independent contractor; and second, that the evidence failed to show negligence on the part of Taylor.   The court denied the challenge, but submitted both questions to the jury, which found a verdict for the respondent.   Judgment was entered thereon, and this appeal followed.

The appellant renews its objections in this court, insisting that the trial court erred in refusing to take the case from the jury on one or both of the grounds suggested.   It has seemed to us, however, that the ruling of the trial court was right.   Whether a person performing work for another is performing it as an independent contractor or as the servant or employee of that other is a question not always easy of solution, but all of the authorities agree that the test of the relationship is the right of control on the part of the employer.   Thus in 26 Cyc. 1546, an independent contractor is defined as follows:

"An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work.   Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results."

Shearman & Redfield in their work on Negligence offer this definition:

"The true test of a 'contractor' would seem to be, that he renders the service in the course of an independent occupation, representing the will of his employer only as to the *result* of his work, and not as to the means by which it is accomplished." 1 Shearman & Redfield on Negligence (5th ed.), § 164.

In 16 Am. & Eng. Ency. Law (2d ed.), p. 187, this definition is given:

"Generally speaking, an independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished. The word 'results,' however, is used in this connection in the sense of a production or product of some sort, and not of a service."

And this court in *Larson v. American Bridge Co.*, 40 Wash. 224, 82 Pac. 294, 111 Am. St. 904, said:

"The general test which determines the relation of independent contractor is that he shall exercise an independent employment, and represent his employer only as to the results of his work and not as to the means whereby it is to be accomplished. The chief consideration is that the employer has no right of control as to the mode of doing the work; but a reservation by the employer of the right to supervise the work, for the purpose of merely determining whether it is being done in accordance with the contract, does not affect the independence of the relation."

In the case at bar, it would seem that the employee was not entirely free from control as to the manner of doing the work. On the contrary, he was subject at all times to the direction of the appellant's foreman as to what particular thing he should haul, when it should be hauled, and as to the place the thing should be taken. He was paid by the month and not by the job, and was at liberty to haul for no one else. These facts, it seems to us, raise sufficient doubt as to the capacity in which Taylor was employed to make the question one of

fact for the jury, rather than a question of law for the court.

The second proposition, that there was not sufficient evidence of negligence on the part of Taylor to make a case for the jury, we think is also not well taken. The jury were warranted in finding that the wagon was overloaded, when the manner of its loading was taken into consideration. The evidence tended to show that the lumber protruded back of the wagon from eight to ten feet, which had a tendency to throw the principal weight upon the hind wheels. It might well be that a wagon capable of carrying two tons, if evenly distributed over all four of its wheels, would not carry the weight of this lumber, if the weight rested principally on only two of its wheels.

Counsel for appellant make this further observation, namely:

"There is still one more suggestion we have to make to the court, and that is that even if Taylor could have been held to be the servant of appellant for the purpose of making deliveries of goods, it was Taylor who was hired, not his wagon. If appellant can be held liable to the respondent for the injuries caused by the breaking of the wagon, why may not Taylor hold the appellant liable for the damage he received caused by the repairs he had to make. On respondent's theory of his case, the wagon was appellant's wagon, in charge of appellant's servant, and engaged in appellant's business, and was broken by appellant's negligence. Upon this theory the case was sent to the jury. But Taylor cannot recover from appellant; he is precluded from such recovery by the very terms of his contract with appellant. We fail to see how respondent can stand in any better position before the court than Taylor would if Taylor brought suit for the recovery of the cost of the repairs to the wagon."

If the appellant employed Taylor to enter its service with his team and wagon, it is just as much responsible for Taylor's acts with relation to the team and wagon as it would have been had it hired Taylor alone and put him to driving a team and wagon which it owned in its own right or hired from some other person. By hiring the wagon the appellant

made it its own as to third persons, notwithstanding as between itself and Taylor the wagon belonged to Taylor. Having this responsibility with reference to the wagon, it was, of course, liable if its servant overloaded it and thereby caused an injury to a third person. This rule does not permit Taylor to recover from the appellant for the injury that was done to the wagon. On the contrary, the fault causing the injury was the fault of Taylor, and the appellant is responsible for it not because it committed the wrong, but on the doctrine of *respondeat superior*, the rule of law that renders masters liable to third persons for wrongs committed by their servants while the servants are engaged in the performance of their master's business. Indeed, so far from the appellant being liable for the injury to the wagon, Taylor is liable over to the appellant for any damage the appellant may be compelled to pay on account of the injury caused by the collapse of the wagon. *Doremus v. Root*, 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649.

The judgment appealed from is affirmed.

DUNBAR, C. J., PARKER, and MOUNT, JJ., concur.