[Civ. No. 4835.  First Appellate District, Division Two.—August 27, 1924.]

JOHNSON, JOSEPH and G. M. JOSSELYN & COMPANY (a Corporation), Respondent, v. H. K. GOODWIN, Appellant.

[1] VESSELS — TRANSFER OF OWNERSHIP — OSTENSIBLE AGENCY — LIABILITY OF REGISTERED OWNER.—Where, after the registered owner has parted with the care, custody, and control of a vessel and has discharged and paid off the crew and the captain, and after the latter has been re-employed by the transferee, a ship chandler, who had never before furnished supplies to said vessel or had any dealings with the registered owner, furnishes ship chandlery and other materials to the vessel at the request of the captain, without knowing who is the registered owner at the time or who is in possession and control of the vessel or that said captain had been employed by the registered owner prior to his employment by the transferee, no liability upon the registered owner can be predicated upon any ostensible agency or holding out of the captain as agent of said registered owner, nor upon reliance of plaintiff thereon.

[2] ID. — OWNERSHIP PRO HAC VICE — EMPLOYMENT OF MASTER — AGENCY.—When the possession, command, and navigation of a ship are transferred by the general owner for any purpose, the person to whom such rights have been transferred becomes owner *pro hac vice*, and the master, if he employs one, is his agent and binds said owner *pro hac vice*, and not the general owner, as his principal.

[3] ID.—CONTROL AND OPERATION—RESERVED RIGHTS—RELATIONSHIP TO TRANSFEREE.—When the agreement between the owner of a vessel and a temporary owner, in legal effect, gives to the latter exclusive possession, control, and management so that he appoints the master, runs the vessel, and receives the entire profits, there is a demise or conveyance of the ship, and the hirer becomes owner *pro hac vice* or for the time being; and the mere fact that the registered owner reserves the right to approve of the operation of the vessel and of its master and licensed officers as a practical protection for his own large interest in the unpaid purchase price of the vessel does not affect the legal relationship of the parties or the equities of the situation.

[4] ID.—OWNER PRO HAC VICE—EVIDENCE.—In this action against the registered owner of a vessel to recover the reasonable value

1.  See 24 R. C. L. 1195.

of ship chandlery and materials furnished to said vessel, the evidence clearly disclosed that a certain person to whom the registered owner had contracted to sell the vessel was the owner *pro hac vice* at the time plaintiff furnished such supplies.

(1) 36 **Cyc.**, p. 158.    (2) 36 **Cyc.**, p. 158.    (3) 36 **Cyc.**, p. 158. (4) 36 **Cyc.**, p. 160.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John J. Van Nostrand, Judge. Reversed.

The facts are stated in the opinion of the court.

William Denman and William B. Acton for Appellant.

S. C. Wright for Respondent.

LANGDON, P. J.—This appeal is taken by the defendant from a judgment for $471.73 against him in an action to recover the reasonable value of ship chandlery and materials furnished to the steam schooner "Nika" in this city and county. The defendant had purchased the "Nika" in Louisiana and brought her to San Francisco. In August, 1922, defendant entered into negotiations with Mr. Mendezona for the sale to him of this vessel. The transaction was consummated on August 10, 1922, and defendant received the first payment upon the vessel called for by the contract. Defendant, thereupon, paid off the crew and discharged them and also paid off the master of the vessel, Captain Roberts, and discharged him. Early the next morning, August 11th, Mendezona took possession of the vessel. He thereupon employed Captain Roberts as the master of the vessel. Captain Roberts, as the agent of Mendezona, then telephoned to the plaintiff that he had an order to give for supplies and they sent their representative to secure the same. This representative, Mr. Newhall, went aboard the "Nika" and was told by the master that the matter was being handled by Mr. Laurent, an employee of the Pan-American Line, at whose pier the vessel was docked. It appears that the Pan-American Line was a corporation engaged in the business of acting as ship's agents in the port of San Francisco, and had been requested by Mr. Mendezona to take charge of the

"Nika" and had done so, on his behalf, on the morning of August 11, 1922. Mr. Laurent gave the order to Mr. Newhall in the presence of the master of the vessel. Later the "Nika" was wrecked at sea and plaintiff sued Mr. Goodwin upon the theory that he was personally liable as the registered owner of the vessel. [1] Mr. Goodwin was the registered owner of the "Nika," but he had parted with the possession, custody, and control of the vessel before the plaintiff entered upon the scene, under the contract of sale with Mendezona. The plaintiff did not know, at the time it furnished the goods, who was the registered owner of the vessel nor who was in possession and control of the same. It had never before furnished supplies to this vessel nor had any dealings of any kind with Mr. Goodwin. It does not even appear from the record that plaintiff knew that Captain Roberts had been employed by Goodwin prior to his employment by Mendezona. No liability can be predicated, therefore, upon any ostensible agency or holding out of Captain Roberts as agent by this defendant, nor upon reliance of plaintiff thereon.

[2] The rule seems well settled by cases in the federal courts that when the possession, command, and navigation of a ship are transferred by the general owner for any purpose, the person to whom such rights have been transferred becomes owner *pro hac vice,* and the master, if he employs one, is his agent and binds said owner *pro hac vice,* and not the general owner, as his principal. (*Webb* v. *Peirce,* 29 Fed. Cas. 501, 503; *McCarthy* v. *Eggers* (C. C.), 1 Fed. 478; *Gum* v. *Frost* (D. C.), 4 Fed. 745; *Scull* v. *Raymond* (D. C.), 18 Fed. 547; *Borland* v. *Zittlosen* (D. C.), 27 Fed. 131; 36 Cyc. 158.)

[3] Indeed, respondent does not seriously dispute the rule announced in the foregoing cases, but challenges appellant's position that the evidence shows Mendezona to have been the owner *pro hac vice.* Respondent's argument is based upon the language of the contract between Goodwin and Mendezona, under which the latter was to purchase the "Nika." That agreement is in the record and provides that the purchaser shall pay $15,000 cash upon August 11, 1922, and the balance in installments thereafter; that upon the first payment being made, Mendezona shall have the use of

said "Nika" from month to month and until the entire purchase price is paid; that said Mendezona shall operate said vessel at his own expense, which operation, before undertaken, shall be subject to the approval of Goodwin, and that no indebtedness shall be created against the vessel without the consent of Goodwin; that the vessel shall be operated in compliance with the navigation and inspection laws of the United States, and master and licensed officers, before their employment, shall be approved by Goodwin; that Mendezona will not permit the vessel to be seized, taken in execution, attached, removed, destroyed, or injured, and will keep it insured for the benefit of Goodwin, and that until the entire purchase price shall be paid, the "Nika" shall remain the property of Goodwin.

It has been stated that when the agreement between the owner of a vessel and a temporary owner, in legal effect, gives to the latter exclusive possession, control, and management so that he appoints the master, runs the vessel and receives the entire profits, there is a demise or conveyance of the ship and the hirer become owner *pro hac vice* or for the time being. (The Law of the Sea, Canfield and Dalzell, c, 3, sec. 10.) In the instant case.the purchaser had control of the operation of his vessel, employed his own master, directed the route and cargo of the vessel and paid all the expenses connected with its management and control and received all the profits. We think the mere fact that the registered owner reserved the right to approve of the operation of the vessel and of its master and licensed officers as a practical protection for his own large interest in the unpaid purchase price of the same, does not affect the legal relationship of the parties nor the equities of the situation. [4] We think the record clearly discloses that Mendezona was the owner *pro hac vice* at the time the plaintiff dealt with Mr. Laurent with reference to furnishing supplies, and it is also clear that had plaintiff sought to inform itself as to who was liable *in personam* for the merchandise it could have obtained information from the Pan-American Line that it had been appointed agent by Mr. Mendezona at the time the articles were ordered; for an official of that company so testified at the trial.

Respondent devotes several pages of its brief to establishing its right to sue *in personam* as well as *in rem* upon a claim of this kind. There is no dispute about that matter. The question is: Who is liable *in personam?* We think Mr. Goodwin is not.

The judgment is reversed.

Nourse, J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 6, 1924, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 23, 1924.