[No. 23339. Department Two. November 24, 1931.]

VINCENT DOMANDICH, *Respondent*, v. PAUL DORATICH et al., *Appellants*.[1]

*Ralph S. Pierce, Kenneth G. Smiles,* and *W. L. Sachse,* for appellants.

*Robert B. Abel* and *Geo. D. Abel,* for respondent.

MAIN, J.—This action was brought to recover damages which the plaintiff sustained by falling down an

[1]Reported in 5 P. (2d) 310.

open hatch on a fishing boat. The trial was to the court and a jury, and resulted in a verdict in favor of the plaintiff in the sum of three thousand dollars. The defendants moved for judgment notwithstanding the verdict, and, in the alternative, for a new trial. The motion for judgment notwithstanding the verdict was denied, and the motion for new trial was overruled, contingent upon the plaintiff's electing to take a judgment for two thousand dollars, which he did. Judgment was entered for this sum, from which the defendants appeal.

The appellants Paul Serka and Jack Anich were the owners of the fishing boat Oceanic, of which the appellant Paul Doratich was master or captain. The boat was of the usual size and type used for fishing purposes on Puget sound and on the inland waters of Alaska. The earnings of the boat were divided into thirteen shares, one to each of the crew, two to the boat, and two to the nets. The crew shared the expenses for fuel and food. The fishing season for the year 1930 started during the latter part of May or early in June.

The respondent was a member of the crew, and was injured August 29, 1930. Late in the afternoon on that day, the boat put into and anchored in Griffin bay, near Friday Harbor, in Puget sound, to overhaul and repair the engine. Anchor was dropped at about five o'clock p. m., and dinner was thereafter served. A part of the crew worked on the engine, and a part were called upon to get wood from the hold of the vessel to "block up the engine." Whether the plaintiff assisted in getting the wood or worked on the engine, is a matter which is in dispute. To get the wood, it was necessary to uncover one of the hatches. There were three covers, each about two feet wide. The two rear covers were removed. After the wood was obtained,

the hatch was left uncovered, which was against the rule of the boat, the captain testifying that he repeatedly gave direction to keep the hatch covered at all times. At about nine o'clock p. m., the respondent, while going to the lavatory, fell through the open hatch and sustained the injuries for which recovery is sought.

The two principal questions presented upon the appeal are, first, whether the relation which the respondent sustained to the enterprise was that of employee or a member of a joint adventure; and second, whether a fisherman, such as the respondent was, was a seaman within the contemplation of the Jones act, which will hereinafter be referred to.

Inquiry will first be directed to determine what the respondent's relation was to the enterprise, whether that of employee or a party to a joint adventure. The respondent was paid as compensation his proportionate share of the earnings of the boat, after deducting the operating expenses. He had a right to quit at any time, and was subject to being discharged by the master for cause. His contract of employment was entirely informal, and consisted of an inquiry to him as to whether "you want to fish with me," and his answer in the affirmative. All members of the crew were subject to the direction of the captain as to the work that they should perform. The respondent was not required to share in the losses, if any.

Two elements which are ordinarily present in a joint adventure are a "close and even fiduciary relationship between the parties" and an agreement whereby the losses, if any, are to be shared. *State ex rel. Ratliffe v. Superior Court,* 108 Wash. 443, 184 Pac. 348. Neither of those elements is present in the case now before us. In *Hinds v. Dept. of Labor and Industries,* 150 Wash. 230, 272 Pac. 734, 62 A. L. R. 225, the rules for deter-

mining whether the existence of the relation of employer and employee was present were stated as follows:

"The rules for determining the existence of the relation of employer and employee are the same as those at common law for the relation of master and servant. Workmen's Compensation Law, Schneider, § 19. To create the relation of employer and employee or master and servant, there must be an express contract or acts such as will show that the parties recognize one as the employer and the other as the employee. *Brewer v. Department of Labor & Industries,* 143 Wash. 49, 254 Pac. 831.

"Whether a person performing work for another is a servant or employee of that other, is a question not always easy of solution, but the authorities are in accord that the test of the relationship is the right of control on the part of the employer. *Glover v. Richardson & Elmer,* 64 Wash. 403, 116 Pac. 861; *North Bend Lum. Co. v. Chicago, M. & P. S. R. Co.,* 76 Wash. 232, 135 Pac. 1017.

"The final test then appears to be whether there was the right of control."

In the present case, as appears from the facts stated, there existed the right of control. In 35 Cyc. 1241, it is said:

"In the earliest periods of maritime commerce, a common method of compensating the seaman was to allow him a share in the profits of the voyage, and this method has been continued as to whaling and fishing voyages; and the validity of contracts providing for such a mode of compensation has been upheld by the courts. This lay or share given to the seaman does not create any partnership in the profits of the voyage, nor does it constitute him a part-owner, but is in the nature of wages and is governed by the same rules, . . ."

From the facts and the law as it appears in the authorities referred to, it definitely follows that the respondent was an employee or servant, and was not a

party to a joint adventure which has sometimes been said to be in the nature of a partnership for a particular transaction.

We shall now inquire whether the respondent was a "seaman" within the purview of the Jones act. Section 688, United States Code Annotated, Title 46, provides that:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . ."

By this act the Federal Employers' Liability Act was made to apply to any seaman. Nowhere in the act is "seaman" defined, and, so far as we are informed, there is no provision therein to the effect that it shall not apply to the members of a crew upon a fishing boat. It will then be necessary to turn to the general definition of "seaman," as it is applied under the maritime law. In § 198, 24 R. C. L., p. 1150, it is said:

"Who are Seamen Under Maritime Law. A seaman has been defined broadly as a person whose occupation is to assist in the management of vessels at sea. Although the term originally included only common sailors, the status and rights of seamen, under the ruling of American courts, from time to time have been extended to persons performing maritime services of various sorts, such as . . . seal hunters and fishermen on sealing and fishing vessels, and in general all hands employed on the vessel in furtherance of the main object of the enterprise in which she is engaged, except the master. Mariners are none the less seamen because their vessel operates exclusively on inland waters, if within the admiralty and maritime jurisdiction of the United States, or between ports in the same state."

In *Sandanger v. Carlisle Packing Co.*, 112 Wash. 480, 192 Pac. 1005, the plaintiff was employed on a motor boat owned by the defendant and operated in connection with a salmon cannery near Cordova, Alaska, and it was there held that the plaintiff's employment was maritime in its nature. In *The Carrier Dove*, 97 Fed. 111, it is said:

"Fishermen are seamen, having uses and customs peculiar to their business, but are at the same time, except as modified by their peculiar contracts, express or implied, protected by the law as other seamen are."

In *North Alaska Salmon Co. v. Larsen*, 220 Fed. 93, the circuit court of appeals, ninth circuit, held that a contract to render service as a seaman on a vessel owned by a salmon company on a voyage from San Francisco to its cannery in Alaska and return, and also as fisherman, beachman, trapman, and such other service as might be required by the company's superintendent, was a maritime contract. It was there said:

"We find no merit in the contention that the cause of suit is not within the admiralty jurisdiction of the court, in that the appellee's contract for service as a seaman, fisherman, beachman, trapman, 'and such other services as might be required' by the appellant's superintendent, was not a maritime contract. In *The Minna* (D. C.), 11 Fed. 759, the libelant was employed solely as a fisherman, and took no part in the navigation of the vessel, which went out every morning to the fishing grounds; the libelant sleeping ashore. It was held that he was entitled to proceed against the vessel for the recovery of his wages. Judge Brown said:

" 'All hands employed upon a vessel, except the master, are entitled to a lien if their services are in furtherance of the main object of the enterprise in which she is engaged. . . . I do not regard the fact that libelant slept upon shore at night, and there reeled out and mended the nets, as qualifying in any

way the nature of his contract. These services were merely incidental and subsidiary to his main contract.'

"In *Alaska Packers' Ass'n v. Domenico,* 117 Fed. 99, 54 C. C. A. 485, this court affirmed the jurisdiction in admiralty of a contract made by men who acted as seamen on a voyage to and from salmon fishing grounds in Alaska to work as fishermen during the season, and assist in canning fish on shore, and in loading them on board for transportation, notwithstanding that the men while engaged in fishing slept on shore, and mended their nets and cared for the fish on shore. [Citing authorities.]"

The cases of *The Cornelia M. Kingsland,* 25 Fed. 856, and *Telles v. Lynde,* 47 Fed. 912, construe a Federal statute other than the Jones act, and may be distinguished for this reason. But if they are not subject to such distinction, they are out of harmony with the later and more authoritative holdings of the Federal courts.

On this branch of the case, we conclude that the respondent was a "seaman" within the contemplation of the Jones Act, and had a right to avail himself of the provisions of the Federal Employers' Liability Act.

The appellants assign error as to certain instructions given and the refusal of the court to give certain requested instructions, but we find no error in this regard. The instructions given properly covered the case, and those which were requested which it would have been proper to give were sufficiently covered by the instructions given.

There are some other questions of minor importance presented, all of which have been considered; but they do not appear to us to require a detailed discussion.

The judgment will be affirmed.

TOLMAN, C. J., HOLCOMB, BEALS, and MILLARD, JJ., concur.