## MURPHY v. HUTZEL.

### No. I.

District Court, E. D. Pennsylvania.

Feb. 27, 1939.

H. M. Long, of Philadelphia, for libelant.

Rawle & Henderson, of Philadelphia, for respondent.

DICKINSON, District Judge.

A ruling in this case has awaited the transcription of the notes of testimony and the receipt of Briefs.

There is a widely prevalent notion that by presence as a guest in any vehicle, the guest becomes so far identified with the host as to be deemed to have waived any charge of negligence against the latter. The fact of such relation as guest and host is present in this case. The thought expressed is sentimental rather than legal. It is evident that the libellant entertained and was influenced by it because the injuries complained of were

sustained August 18th, 1935. No libel was filed until January 6th, 1938, and no suggestion of a demand for damages made until shortly before the libel was filed. Indeed there is room for the inference that had not the libellant, after the occurrence on which his claim is based, felt the need of financial aid, and had the respondent responded more fully than he did to libellant's appeal for a loan, the libel would not have been filed. This reluctance of the libellant to press a legal claim may be viewed as creditable to him or it may be viewed in discredit of his claim. The fact remains that the claim made is a stale one and the law discourages stale claims.

We are inquiring into an event almost four years after its occurrence, and such a lapse of time almost always presents difficulties. The main facts, however, are not in controversy. Indeed the only facts in dispute are the extent of the damages suffered by the libellant and whether the respondent had knowledge of the leakage of gasoline when he started his motor.

The respondent was the owner of a gasoline launch, which he used as a pleasure boat for the entertainment of himself and his friends. A number, including the libellant and his wife, had been invited by the wife of the respondent to a crabbing party. The water in which the crabbing was done was shallow. The tide was on the ebb. The launch was steered so far out of the channel that she grounded in the shoal water at the side of the channel. There was nothing unusual or perilous in this as the bottom was soft. The only inconvenience was that the occupants of the launch would be compelled to await the turn of the tide before she was again afloat. This meant nothing as the crabbing was done from a small boat which the launch had brought with her. The sides of the channel were a little sloping. This gave the launch a list. The party accepted the situation and amused themselves swimming and crabbing while waiting for the turn of the tide. An anchor had been thrown out from the launch. When the time came to make the return trip home and the launch was again afloat, the libellant who had put on a bathing suit and had left the launch, was asked to trip the anchor. He returned to the launch for this purpose. The respondent was navigating the launch. While the libellant was in the act of taking in the anchor the respondent turned the switch which operated the motor. In the instant there was a flash and what the libellant calls an explosion and the respondent a fire, occurred. All the occupants of the boat were then in real peril because of the rapid spread of the fire. Fortunately they were all accustomed to being about boats and the water and they scrambled out of the boat into the shoal water, thus avoiding the fire danger. The libellant was at the time at what may be called the origin of the fire. According to his version he was hurled by the force of what he describes as an explosion, out of the boat. Whether what happened may be called an explosion or simply a fire, he was severely burned about the chest and legs. The respondent, after his wife and two children who were of the party were conducted to safety, endeavored to check the progress of the flames. In this he was unsuccessful and the launch was completely destroyed by the fire. The members of the party were rescued by other boats which were near at hand.

The only other fact which is in controversy is that the libellant and his wife testify that there was a strong smell of gasoline when the respondent started his motor, to which his attention was called. This he and his witnesses deny. There is no doubt that the fire was due to an inflammable mixture of gasoline vapor with the air of the bilge of the launch. The proportion of vapor to air to make an inflammable mixture is not large but there is always enough of the gas to make its presence known by the smell. Some people much more readily detect the presence of gas by smell than do others. This launch, however, resting on the mud bank at the side of the channel had a list. There was danger that some gasoline had escaped into the bilge.

We find that the respondent was guilty of negligence in not having assured himself of the absence of gas before starting his motor.

We dispose of the averments of acts of negligence in the libel, as follows:

Averments 1, 2 and 3 are not found.

Averments 4, 5 and 6 are found to the extent indicated above.

There is a distinction, however, between negligence and actionable negligence. For illustration, negligence which did not contribute to the damage sustained is negligence but not actionable negligence. So likewise a distinction has been sought

to be drawn between an "invited person" and a "business visitor". The former has been said not to have a cause of action for injuries, the latter to have. McCann v. Anchor Line, 2 Cir., 79 F.2d 338.

The relation of the owner of a boat and those invited to join a junketing trip on her is often a peculiar one. The boat must be managed, and otherwise guests, if familiar with the handling of boats, act as members of the crew. Such was the case here, and the libellant was hurt while acting as a member of the crew. The host and guests were common adventurers, much as if two or more together hire a boat. They are both hosts and guests.

Because of the view we have taken the question of liability need not be decided nor need that of damage be considered.

The libellant is portrayed to us as the victim of shattered nerves, with more than a hint that the consequences had extended to his mentality. We would not be justified in finding that he was more than the victim of severe second degree burns. No physician was called to testify to any secondary or permanent injury. We are supplied with no account of any expenses to which he was subjected. His hospital expenses, in the sum of $80 were paid for by the defendant. The respondent likewise advanced him the sum of $250, which, at libellant's request, was cast in the form of a loan.

The real question in the cause is that of whether the libellant has lost his right of action because of his delay in filing his libel. The cause of action, if one existed, arose August 18th, 1935. The libel was not filed until January 6th, 1938. Admiralty has no bar of statute of limitations. It does accept, however, the equitable doctrine of laches. Laches and statutes of limitation have a common objective. They both discourage to the point of rejection, stale claims. This is a policy adopted in the public interests. They operate differently however. A statute of limitations is an arbitrary bar. Its application is determined by the calendar. Laches on the other hand is not arbitrary. It bars an action not merely because of the lapse of time but because in equity it should be barred. A general principle however is that Equity follows the law. When an action at law is barred by a statute a proceeding in Equity will usually be condemned for laches. In other words, some reason or at least excuse for the delay must be made to appear. No reason or excuse for the delay here is advanced.

The libel should be dismissed for laches.