In the Matter of the Complaint of James F. COLEMAN, as owner of a 47′ "Kenner Swanee" 1969 Houseboat, for exoneration from or limitation of liability in a cause of limitation of liability, civil and maritime.

Barbara BUZAN, Third-Party Plaintiff,

v.

KENNER BOAT COMPANY, A.J. Industries, Inc., Kenner Boat Company, Inc., Kohler Manufacturing Company, Rex Marine Center, Rowayton Boatworks and Boatworks, Inc., Third-Party Defendants,

v.

Martin COLEMAN, John Hokenson and Marine Basin Marina, Fourth-Party Defendants.

No. 74C 319.

United States District Court, E. D. New York.

Feb. 26, 1980.

Bigham, Englar, Jones & Houston, New York City, for complainant, third-party plaintiff, James F. Coleman.

Lilly, Sullivan & Purcell, P.S., New York City, for third-party plaintiff, Barbara Buzan.

Eckhaus & Eckhaus, New York City, for Kenner Boat.

McHugh, Heckman, Smith & Leonard, New York City, for Kohler Mfg.

Sergi & Fetell, Brooklyn, N.Y., for Rex Marine.

John J. Langan, New York City, for Rowayton.

Lilly, Sullivan & Purcell, New York City, for fourth-party defendant, Martin Coleman.

Gabel & Markey, New York City, for Marine Basin.

Morrow D. Mushkin, Brooklyn, N.Y., for J. Hokenson.

## MEMORANDUM & ORDER

PLATT, District Judge.

Martin Coleman moves for an order permitting him to file a claim in the limitation proceeding and the Third-Party Defendants (except the Third-Party Defendant Rowayton Boatworks) move for an order dismissing the cross-claims of the Fourth-Party Defendant Martin Coleman as against them. There is also pending before this Court the question of whether the claimant and third-party plaintiff Barbara Buzan's demand for a jury trial should be stricken.

## FACTS

On August 28, 1973, while the 47' "KENNER SWANEE" 1969 Houseboat known as the Tralee was docked and refueling at Marine Basin Marina in Brooklyn, New York, an explosion occurred in the yacht's engine compartment and she was destroyed

by fire. In the accident Barbara Buzan and Martin Coleman, the yachtowner's son, were injured.

On February 25, 1974, complainant, James F. Coleman, as owner of the yacht, filed a complaint in this Court seeking exoneration from or limitation of his liability as a shipowner under 46 U.S.C. § 183 *et seq.* Pursuant to an order dated February 26, 1974, of this Court, (Judd, J.), complainant was directed to and did publish notice of the instant proceeding in the New York Law Journal. This order also directed that the Clerk issue a notice to all persons asserting claims with respect to which the complaint seeks limitation and exoneration "admonishing them to file their respective claims with the Clerk of this Court in writing and to serve on the attorneys for the complainant a copy thereof on or before April 17, 1974 or be defaulted . . .".

The only claim[1] received by complainant was one made by claimant, third-party plaintiff Barbara Buzan. On April 17, 1974, Ms. Buzan filed an answer and claim in this limitation proceeding and in May of 1975 issued third-party summonses and complaints against the above-named third-party defendants.

Thereafter, on December 11, 1975, and March 26, 1976, the third-party defendants Kohler Manufacturing Company ("Kohler") and Rex Marine Center ("Rex Marine"), respectively, filed fourth-party complaints against Martin Coleman as to which (although the same were never served upon him) he on June 6, 1979 appeared, answered and interposed counterclaims as well as his claim in this limitation proceeding.

Asserting that Martin Coleman's claim was not timely, since it was not made with-

in the deadline set by this Court's order of February 26, 1974, the attorneys for James F. Coleman returned these papers and Martin Coleman made this motion.

## DISCUSSION

### I

Rule F(2) of the Supplemental Rules for Certain Admiralty and Maritime Claims prescribes that the complainant's complaint for limitation:

" . . . shall state the voyage, if any, on which the demands sought to be limited arose, with the date and place of its termination; the amount of all demands including all unsatisfied liens or claims of liens, in contract or in tort or otherwise, arising on that voyage, so far as known to the plaintiff, . . ."

Rule F(4) of said Rules provides, in pertinent part, that:

"The plaintiff not later than the day of second publication shall also mail a copy of the notice to every person known to have made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose".

We are convinced that in the winter and spring of 1974 James F. Coleman knew that, in fact, his son had not asserted any claim and that he did not know, or even at that time have reason to believe, that his son intended to assert any claim against the vessel. There would therefore have been no reason for him to mail his son an F(4) notice. Martin Coleman's claim now that his father's failure to comply with such Rule renders the time limit for the filing of

---

1. The fact that Mr. James F. Coleman's insurance carrier, pursuant to a medical policy covering members of his household, paid Martin Coleman's medical bills does not constitute an assertion of a claim against the owner particularly under the circumstances presented here. According to Mr. James F. Coleman "most of them (the medical bills) came directly to me without going through him" (Martin Coleman) * * *; "I submitted them to my insurance company." (Tr. 28) And his son did not ask him "to pay those bills". (Tr. 29).

*See Petition of Hutchinson,* 28 F.Supp. 519 (E.D.N.Y. 1938) where under similar circumstances this Court held that where no claim or notice of claim is presented and the owner voluntarily pays medical bills, the same does not constitute an assertion of a claim. The Court expressly also held that "Mere notice or knowledge, on the part of the owner, of the accident is insufficient."

claim in this proceeding ineffectual against him is therefore without merit.

## II

Martin Coleman argues further that "in the interests of justice" he should be given permission to file a late claim since the limitation proceeding is still pending and "the rights of the concerned parties are not adversely affected." (Memo p. 7).

Martin Coleman swears that he knew nothing of this proceeding for limitation until March, 1979. (Tr. p. 43). His father swears that he "discussed (the litigation) from time to time with all members of my family including Martin" and tried to explain it "to the whole family" at "Christmas time or something"—apparently Christmas of 1974. Thereafter Martin Coleman talked to his father and his sister "about the possibility of bringing a lawsuit for his own injuries against his father but did nothing about it until he was telephoned by John Lillis, Esq., of the firm of Donovan, Maloof, Walsh & Kennedy who requested Martin Coleman to testify as a witness in New York. When Martin Coleman asked Mr. Lillis for legal advice, Mr. Lillis referred him to Peter Junge of Lilly, Sullivan & Purcell, P.C., because of a potential conflict of interest.

The Court credits the testimony of Mr. James F. Coleman and finds that it cannot accept the veracity of the testimony of Mr. Martin Coleman on this question. Martin's testimony just does not square with the natural tendencies of human beings given all of the circumstances presented here. The Court believes that Martin Coleman was aware of the existence of his father's lawsuit and of his father's attempt to limit his liability against Ms. Buzan and was also aware that he had a possible claim for his own injuries which at this juncture appear to be more serious than Ms. Buzan's.

Nonetheless, Martin Coleman argues that (i) at the time of the accident he was only eighteen years old, (ii) he was confined to the hospital for the next two months and thereafter to his home for recuperation, (iii) he went to college in Ohio in January 1974 and was away from home when his father commenced this action in February 1974, (iv) he never received a notice thereof, (v) he was home only sporadically thereafter and has lived most recently on a permanent basis in California, and (vi) there can be no prejudice to the rights of anyone other than Ms. Buzan by his admission to this proceeding and her lawyer has stated Ms. Buzan has no objection thereto.

James F. Coleman's counsel on the other hand states that he is prejudiced by "the additional preparation and delay" which would result from the intervention of Martin Coleman in the proceeding at this stage.

The Court of Appeals for this Circuit in *Sagastume v. Lampsis Nav. Ltd., etc.,* 579 F.2d 222 (2d Cir. 1978), has recently held, however, that this type of prejudice is insufficient. In that case, preparation to defend the validity of certain releases was the only prejudice possible, yet the Court allowed appellants to challenge the releases, stating (*id.* at 224):

> "Supplemental Rule F(4), F.R.Civ.P., provides, in part, that 'for cause shown, the court may enlarge the time within which claims may be filed.' Such a decision is within the sound discretion of the district court. See *Meyer v. New England Fish Co. of Oregon,* 136 F.2d 315 (9th Cir.), *cert. denied,* 320 U.S. 771, 64 S.Ct. 83, 88 L.Ed. 461 (1943). In general, however, 'so long as the limitation proceeding is pending and undetermined, and the rights of the parties are not adversely affected, the court will freely grant permission to file late claims . . . upon a showing of reasons therefore.' *Texas Gulf Sulphur Co. v. Blue Stack Towing Co.,* 313 F.2d 359 (5th Cir. 1963), quoting from 3 Benedict, *Admiralty* § 518 at 542 (Knauth ed. 1940); see also, *The Spring Hill,* 172 F.2d 355 (2d Cir. 1949); *In re Industrial Transportation Corp.,* 344 F.Supp. 1311 (E.D.N.Y. 1972); *Petition of Tugboat Dalzellea, Inc.,* 254 F.Supp. 298 (S.D.N.Y. 1965).
>
> "In this case, the limitation proceeding is pending and undetermined. Appellee's only claim of prejudice is that it will have to defend the validity of the releases."

See also 3 Benedict on Admiralty Section 83, p. 8–137 which provides:

§ 83. Late Claims.

"So long as the limitation proceeding is pending and undetermined, and the rights of the parties are not adversely affected, the court will freely grant permission to file late claims, upon an affidavit reciting the reasons for the failure to file within the time limited. If the commissioner to receive claims has already rendered his report and finished his work, the court may require a supplementary report or may direct the clerk of the court to receive such late claim. (See Form 83–2, where such action was recited).

After the case has reached the point where the efforts of the timely claimants have obtained an offer of settlement, the court will not permit belated claimants to come into the proceedings and reap the benefit of the efforts of those who are timely."

Under normal circumstances then, at this juncture, Martin Coleman would be allowed to proceed. However, as will be seen, that is not the case here.

## III

Ms. Buzan claims she was a seaman and is entitled to Jones Act status. Martin Coleman claims he was a seaman but admits he is not so entitled; he, however, claims as a seaman he is entitled to sue for breach of warranty of seaworthiness under the common law. Ms. Buzan claims the latter right plus the right to recover for negligence both as a seaman and on the ground of diversity of citizenship. Both claim the right to a jury trial and to have the jury determine their seaman status.

■ The difficulty with Martin Coleman's counterclaim is that in a multiple claimant case in a federal court with the claim exceeding the limitation fund, all questions must be determined by the Court in admiralty without a jury. 3 Benedict on Admiralty, § 22 (quoted *infra*).

If Martin Coleman was a passenger or guest and not a seaman, he can sue only for negligence and his claim would be time barred since he failed to file his claim within three years of either the accident or September 1, 1974, the date on which New York lowered the age of majority to 18.[2] If such is the case, then the case is still a single claimant case and the question of whether Ms. Buzan is entitled to a jury trial is still extant. As is stated in 3 Benedict on Admiralty, § 22 (at 3–10):

"On further appeal the Supreme Court laid down the rule that whenever there is only a single claim or action, the plaintiff may have a trial on the merits with the limitation proceeding being kept in abeyance. A large number of Jones Act cases are single accidents, and the result is that all such single accident cases may be tried before juries. Only if two or more persons are injured in one accident on one distinct occasion may the shipowner, by filing his liability petition, oust the common law court and force a non-jury trial in the admiralty court."

■ In its present posture, however, the Court having indicated that Martin Coleman's claim may be filed in the limitation proceeding, he has forced a non-jury trial on the admiralty side and hence it is for this Court to decide whether Martin Coleman was a seaman or not.

The Court is aware of the fact that Chief Judge Mishler, in *Bedia v. Ford Motor Company*, 58 F.R.D. 423 (E.D.N.Y. 1973), held that whether plaintiff, the owner's brother-in-law who was injured on a yacht in a shark fishing contest, was a seaman, was a question for the jury, but that does not change the situation here. It merely means that in this case it is a question of fact for this court. The Court is not persuaded that *In re Read's Petition*, 224 F.Supp. 241 (S.D. Fla. 1963), presents a comparable set of facts because the claimant "was not a volunteer", he was not "a guest invited aboard just for the ride", he "was neither a friend nor acquaintance of the Petitioners but had represented to one of them that he had

2. See N.Y. C.P.L.R. § 105(j) (McKinney's 1972).

sufficient sailing experience to be a member of a crew (in an ocean yacht race)—and he came aboard for the very purpose of aiding in the navigation of a vessel" (224 F.Supp. at 246).

## IV

 Under Connecticut law (where the voyage began), under Virginia law (where Martin Coleman was at that point domiciled) and under Federal law (26th Amendment to the United States Constitution), Martin Coleman was the adult son[3] of the owner, James F. Coleman. In this Court's view, he, as a family member, and regardless of his status as infant or adult, was either a guest, a passenger or possibly a dutiful son just helping his father, but in no sense was he "a seaman [or] crew member employee" (Id. at 247). *See also Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); *Merrill Trust Company v. Bradford*, 507 F.2d 467, at 471 (1st Cir. 1974); *Armour v. Gradler*, 448 F.Supp. 741 (W.D.Pa. 1978); *Nuccio v. Royal Indemnity*, 280 F.Supp. 468 (E.D.La. 1968).

It is clear therefore that Martin Coleman has only a claim for negligence and it is time barred under the applicable three year statute of limitations (N.Y. C.P.L.R. §§ 214, 208 (McKinney's 1972) and/or laches.

This leaves only Ms. Buzan's claim for a jury trial on the question of her status as a seaman or crew member employee. While she may now be (as she heretofore may have been) correct in her claim that she is entitled to have this question determined by a jury, the parties should ponder her status in the light of the above discussion.

There remains the third-party defendants' motion to dismiss the cross claims of the defendant Martin Coleman against them on the ground that they too are barred by the three year statute of limitations applicable to negligence claims and laches. To the extent that such cross claims purport to exceed third-party defendants' claim against Martin Coleman,

their motions should be and hereby are granted; to the extent that they do not, their motions should be, and hereby are, denied.

So ordered.

---

**3.** Under New York law he was a minor at the time of the accident but this does not change his status on board the vessel. See N.Y. C.P. L.R. § 105(j) (McKinney's 1972).