FORET, Judge.
This appeal is from a case involving an injury which plaintiff, Nolan Griffin, sustained while aboard a boat owned by defendant, Carl Lecompte, Jr. Plaintiff filed suit against Carl Lecompte, Jr. and his liability insurer, General Agents Insurance Company of America, alleging that he was entitled to recover damages for breach of the warranty of seaworthiness under the general maritime laws of the United States. The trial court rendered judgment for plaintiff finding that defendant had owed the warranty of seaworthiness to plaintiff and breached it. The court found plaintiffs proven damages to be $42,149.70 but, finding plaintiff to have been 80% at fault, reduced that amount by 80% to $8,429.94, with costs and interest from April 9, 1981. Defendant appealed the court’s decision.
This appeal presents this Court with two major questions:
(1) Whether plaintiffs accident fell within admiralty jurisdiction, and if so,
(2) Whether defendant-boat owner owed the warranty of seaworthiness to plaintiff.
FACTS
In October or November of 1979, defendant, Carl Lecompte, Jr., purchased a twenty-foot, homemade, aluminum hull boat which was powered by a 175 horsepower outboard motor. The design of the boat and its appurtenances were for commercial fishing, primarily shrimping. Mounted on the inside of the hull was a single drum aluminum winch which was powered by an electric motor.
On September 2, 1980, defendant went shrimping in Calcasieu Lake. The lake is salt water and only a few minutes running time from the Gulf of Mexico. It is highly productive of shrimp and the scene of extensive commercial fishing. Lecompte was accompanied by his father, Carl Lecompte, Sr. and by his father-in-law, plaintiff, Nolan Griffin.
Defendant testified that he was reluctant to go out that morning because the winch’s dog (a device which acts as a brake on the drum of the winch) was missing. At trial, he testified that plaintiff urged him to go out and that finally he agreed. The three men planned to “make a drag or two” to test out equipment. They were going to let defendant’s father take home any shrimp they caught.
Up until that morning, the winch mounted on the hull of defendant’s boat did not have a cable on it. On the suggestion of plaintiff and under his supervision, plaintiff, defendant, and defendant’s father rigged a cable on the winch so that the winch could be used to lift the large net on defendant’s boat. Plaintiff apparently did most of the installation himself, and it is clear that defendant relied on plaintiff’s knowledge and experience for the installation.
The three men had only been shrimping a short time when the engine of the boat stopped. The water was choppy and the net was left out to act as an anchor. The men were able to signal a passing boat which agreed to tow defendant’s boat in. At this point, on his own initiative, plaintiff began to take the net in using the winch. Plaintiff used his left hand to guide the *209 cable onto the winch. This was necessary because there was nothing on the winch itself to guide the cable. As plaintiff was taking in the cable, the movement of the boat in the choppy seas apparently threw him off balance and the cable drew his left hand into the winch, which had no protective device to prevent such an occurrence. Plaintiffs left hand received a crushing-type injury. Although there were no broken bones, there were lacerations and damage to the soft tissue. As a result of the injury, plaintiffs hand was 20% disabled.
There was a great discrepancy in the knowledge and experience which the participants in the fishing trip had. Defendant was not a fisherman by profession. The boat he owned at the time of the accident was the largest boat he had ever owned and the only one with a winch on it. Plaintiff, on the other hand, had been a commercial fisherman all of his working life. He had served on or captained a number of shrimping vessels and had extensive experience using winches similar to the one involved in the accident.
ADMIRALTY JURISDICTION
The court below found that at the time of the accident the boat was engaged in commercial activity. Specifically, it found that the boat was making a “test run”, ironically trying out the winch and cable for the first time. There was no evidence to contradict the testimony that defendant’s boat was a commercial shrimping boat in design and not suitable for sport fishing or other types of recreational activity.
Given these factual findings of the lower court, we think that the incident which forms the basis of this suit falls within admiralty jurisdiction. The boat involved was a commercial boat and, at the time of the accident, it was involved in a commercial endeavor. For a claim to be cognizable in admiralty, the wrong must bear a significant relationship to traditional maritime activity. Foremost Insurance Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). Clearly, in this case, the requisite condition for admiralty jurisdiction was met.
WARRANTY OF SEAWORTHINESS
The next question which we must consider is whether plaintiff was a member of that class to which the owner of a vessel owes the warranty of seaworthiness.
The warranty of seaworthiness makes the ship owner liable for injuries caused by the unseaworthiness of his vessel or appurtenances. This liability is liability without fault and is not limited by the concept of negligence. Seas Shipping Company v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Initially, the warranty of seaworthiness was only owed to seamen, but in Sieracki, the court held that the warranty of seaworthiness was not limited to seamen in the ship’s service under the immediate hire of the ship’s owner but extended to longshoremen aboard the ship who, with the owner’s consent or arrangement, were doing the traditional work of seamen and incurring a seaman’s hazards. Conversely, in Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), the Supreme Court held that the warranty of seaworthiness was not owed to social guests of the seamen aboard ship. Clearly, the present case falls somewhere between Sieracki and Kermarec. Plaintiff was not an employee, but neither was he only a social guest.
In Klarman v. Santini, 503 F.2d 29 (2d Cir.1974), the court held that an auxiliary police officer killed aboard a police launch was not entitled to bring an action for unseaworthiness. At the time of the fatal accident, the police launch was attempting to free a sloop that had run aground. San-tini, who was being trained in the operation of the launch, was on board for the first time. Although, he assisted in the operation of the launch and twice fastened the line from the sloop to a towing bar on the launch, the court found that he was not owed the warranty of seaworthiness by the owner of the police launch. In so finding, the court stressed that he had had no duty *210 to perform any service in connection with the operation of the launch. Similarly, in the present case, plaintiff had no duty to assist in the operation of defendant’s boat. Whatever services he performed were strictly voluntary. He was under no compulsion to perform any service and any hazards he faced, he faced voluntarily.
Although Sieracki, supra, explicitly held that there need be no employer/employee relationship between the ship owner and the injured party, the holding did not nullify the importance of the existence of some employment relationship in determining if an injured party is owed the warranty of seaworthiness. In In Re Read’s Petition, 224 F.Supp. 241 (1963), the court had to determine if a member of the crew of a recreational yacht was owed the warranty of seaworthiness. Although the court held that in that case the crew member was entitled to bring an action for unseaworthiness, we feel that the court’s rationale argues for the opposite conclusion in the present case. In In Re Read’s Petition, the court felt that the existence of an employer/employee relationship was an important consideration in determining if an action for unseaworthiness could be maintained. There, the court stressed that although the injured crew member was not paid for his services, he was a member of a crew and subject to the orders of the ship’s master. The case before this Court involves a totally different situation. The plaintiff was not a member of a crew and was not subject to the orders of defendant. At trial, plaintiff testified that his principal occupation when he went fishing with the defendant was to teach the defendant how to use the boat and its equipment. It is clear that, under the circumstances, if anyone was giving orders, it was plaintiff.
The evidence indicates that plaintiff was able to exert a good deal of control over the boat and its operation. Defendant followed plaintiff’s directions in choosing a place to fish and defendant took his boat out that morning due, at least in part, to the urging of plaintiff. These things considered, it is apparent that plaintiff was more of a co-adventurer than a crew member or a guest. At least in the context of recreational boating, it has been held that when a party is a co-adventurer, the policy in historical function of the seaworthiness doctrine will not support unseaworthiness liability. Armour v. Gradler, 448 F.Supp. 741 (1978).
Having considered the status of plaintiff on defendant’s boat, we are forced to conclude that plaintiff was not entitled to the protection of the warranty of seaworthiness. The court below erred in granting judgment based on the unseaworthiness of defendant’s boat.
DECREE
For the foregoing reasons, we reverse the decision of the trial court. All costs of this appeal and at the trial level are assessed against plaintiff-appellee.
REVERSED.