471 So.2d 1382 (1985)
Nolan GRIFFIN
v.
Carl LeCOMPTE, Jr., and General Agents Insurance Company of America, Inc.
No. 85-C-0016.
Supreme Court of Louisiana.
June 17, 1985.
Rehearing Denied September 9, 1985.
*1384 J.B. Jones, Jones, Jones & Alexander, Cameron, for plaintiff-applicant.
Jeffrey M. Cole, Plauche, Smith & Nieset, Lake Charles, for defendant-respondent.
WATSON, Justice.
Does a shipowner owe a warranty of seaworthiness to a participant in a seafaring venture who is injured in the service of the ship?
On August 30, 1980, plaintiff, Nolan Griffin, a shrimper for over forty years, injured his hand when a shrimp boat's motor failed and his hand was caught in the winch cable.[1] He has a twenty percent permanent disability of the left hand.[2] At the time of the accident, defendant, Carl LeCompte, Jr., the owner of the boat, was also plaintiff's son-in-law.[3] It was a "commercial inland boat."[4] In previous shrimping ventures, plaintiff had generally received twenty-five percent of the proceeds.[5] Even though this particular outing was a trial run for the boat, the group was trawling for shrimp.[6]
The trial court concluded that this was a commercial venture. At the time of the accident, there is no question that the boat was unseaworthy: the engine had failed; it lacked motive power; the anchor was inadequate; and the winch apparatus itself was dangerous and hazardous. The trial court decided that the boat owner owed Griffin a warranty of seaworthiness which was breached in the accident. Because Griffin was the more knowledgeable of the three men, the trial court found him eighty percent at fault. General damages of $25,000; lost wages of $15,000; and medical expenses of $2,149.70 were all reduced by eighty percent to $8,429.94.
The Court of Appeal found admiralty jurisdiction but decided no warranty of seaworthiness was owed to plaintiff in the absence of an employer/employee relationship. The trial court decision was reversed. Griffin v. LeCompte, 459 So.2d 207 (La.App. 3 Cir.1984). A writ was granted to consider the judgment. 463 So.2d 1312 (La., 1985).

SEAMAN'S STATUS
The court of appeal apparently confused a Jones Act requirement for seaman's status; that is, an employment relationship,[7] with the test for seaman's status under general maritime law.[8] It is elementary that seamen retain their remedies under general maritime law in addition to the *1385 remedies provided by the Jones Act. Presley v. Vessel Carribean Seal, 709 F.2d 406 (5th Cir., 1983). Presley involved an injury to an employee aboard an oceanographic research vessel who was statutorily precluded from Jones Act coverage but nonetheless had seaman's status under general maritime law.
"The duty to provide a seaworthy vessel is absolute and extends not only to the owner's employees but to all who do seaman's work. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946)." Baker v. Raymond Intern., Inc., 656 F.2d 173 at 181 (5th Cir., 1981), cert. den. 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861.
Recovery under the general maritime law for unseaworthiness requires either crew member status or an injury aboard ship while doing a seaman's work. Powers v. Bethlehem Steel Corporation, 477 F.2d 643 (1st Cir., 1973), reh. den. 483 F.2d 963, cert. den. 414 U.S. 856, 94 S.Ct. 160, 38 L.Ed.2d 106. Seaman's status extends to all those aboard a ship "doing a seaman's work and incurring a seaman's hazards."[9]
An owner's duty to furnish a seaworthy vessel must be considered apart from his Jones Act duty of reasonable care. Hussein v. Isthmian Lines, Inc., 405 F.2d 946 (5th Cir., 1968); Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).
Unseaworthiness and Jones Act negligence are alternate grounds of recovery. McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958); Hubbard v. Faros Fisheries, Inc., 626 F.2d 196 (1st Cir., 1980).
The question of seaman's status under general maritime law is ordinarily one of fact. Presley v. Vessel Carribean Seal, 709 F.2d 406 (5th Cir., 1983).
Under general maritime law, a seaman is anyone working aboard a vessel in navigable waters: whose labor contributes to the purpose of the vessel, Mahramas v. American Export Isbrandtsen Lines, Inc., 475 F.2d 165 (2d Cir., 1973); is exposed to the usual maritime risks; and/or does tasks traditionally performed by members of a ship's crew. International Stevedoring Company v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926); Seas Shipping Company v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed.2d 1099 (1946). There are "pockets of Sieracki seamen remaining after the 1972 amendments [to the LHWCA]." Aparicio v. Swan Lake, 643 F.2d 1109 at 1118 (5th Cir., 1981).
"`The duty to provide a seaworthy vessel is absolute and extends not only to the owner's employees but to all who do seaman's work. Sea's Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). This duty is commonly called a warranty of seaworthiness, not because it is a warranty, but because it is a species of liability without fault and the duty is an "absolute, continuing, and nondelegable" incident of vessel ownership. Allen v. Seacoast Prods., Inc., 623 F.2d 355, 364 (5th Cir.1980).' Baker v. Raymond Intern., Inc., 656 F.2d 173, 181 (5th Cir.1981)." Cenac Towing Co. v. Terra Resources, 734 F.2d 251 at 253, footnote 2 (5th Cir., 1984).
The court of appeal relied on Armour v. Gradler, 448 F.Supp. 741 (W.D. Penn.1978) which held that no warranty of seaworthiness is owned to a co-adventurer in a recreational outing on a boat. However, the trial court made a factual finding that this was a commercial rather than recreational venture. The court of appeal reached the opposite conclusion without finding the trial court clearly wrong in classifying it as a commercial venture. The record supports the conclusion that plaintiff was not on a recreational outing.[10] *1386 He was in the service of the ship, contributing to the purpose of the vessel, exposed to the usual maritime risks, and doing tasks traditionally performed by members of the ship's crew.
Even if the outing were classified as recreational, Justice Marcus, speaking for a six person majority, has decided that, because of Foremost, the "substantive law of admiralty" applies to accidents on recreational vessels. McCraine v. Hondo Boats, Inc., 399 So.2d 163 at 167 (La., 1981), U.S. cert. den. 458 U.S. 1105, 102 S.Ct. 3483, 73 L.Ed.2d 1366.
An unpaid volunteer crewman on a yacht has been held to be a Jones Act seaman entitled to the warranty of seaworthiness. In re Read's Petition, 224 F.Supp. 241 (S.D.Fla.1963). It cannot be said as a matter of law that brothers-in-law on a joint venture shark fishing expedition are not seamen. Bedia v. Ford Motor Company, 58 F.R.D. 423 (E.D.N.Y.1973). Members of a yachting party were declared not to be seamen in Merrill Trust Company v. Bradford, 507 F.2d 467 (1st Cir., 1974), but there was no claim of unseaworthiness in that case. Compare Matter of Coleman, 489 F.Supp. 507 (E.D.N.Y.1980), appeal dismissed 646 F.2d 561.
The Coleman court said that the yacht owner's son, who claimed seaman's status was: "either a guest, a passenger or possibly a dutiful son just helping his father...." 489 F.Supp. at 512. At the time of the accident, the houseboat was docked for refueling, and there is no indication that young Coleman was performing a seaman's duties.
In Armour v. Gradler, 448 F.Supp. 741 (W.D.Penn.1948), Armour was a "guest"[11] on the Gradler boat. The court said, in dicta, that the unseaworthiness doctrine "was not intended to include two friends fishing for recreational purposes."[12] However, there was no evidence that Armour was performing any of a seaman's duties, which is contrary to Griffin's situation.
The status test for unseaworthiness damages is either: (1) employee status as a crew member or; (2) performance of a seaman's work while subject to a seaman's hazards. Imperial Oil, Limited v. Drlik, 234 F.2d 4 (6th Cir., 1956), cert. den. 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed.2d 236. In Coleman and Armour there was no evidence that those claiming the warranty were actually working on board the boats. Compare Murphy v. Hutzel, 27 F.Supp. 473 (E.D.Penn.1939) where a guest was hurt while acting as a member of the crew on a junketing boat. "The relation of the owner of a boat and those invited to join a junketing trip on her is often a peculiar one. The boat must be managed, and otherwise guests, if familiar with the handling of boats, act as members of the crew. Such was the case here, and the libellant was hurt while acting as a member of the crew. The host and guests were common adventurers, much as if two or more together hire a boat. They are both hosts and guests." 27 F.Supp. at 475. (Emphasis added)
"The duty to provide a seaworthy ship extends not only to the owner's employees but to all `who perform the ship's service ... with his consent or by his arrangement,' Seas Shipping Company v. Sieracki, 328 U.S. 85, 95, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946)." Mahramas v. American Export Isbrandtsen Lines, Inc., 475 F.2d 165 at 169 (2d Cir., 1973). A nonemployee line handler aboard a ship doing seaman's work is owed the warranty of seaworthiness by the vessel and its owner. Sandoval v. Mitsui Sempaku K.K. Tokyo, 460 F.2d 1163 (5th Cir., 1972).
There is no question that Griffin was in the service of this shrimp boat. He had been a commercial fisherman all his working life and was assisting in this boat's mission, catching shrimp. Nothing more could be more traditionally maritime than harvesting the fruits of the sea from a *1387 boat. Bringing in the net is a seaman's task; that was what Griffin was doing when he was injured. He was working as a seaman and had seaman's status.

UNSEAWORTHINESS
"The doctrine of unseaworthiness was introduced to the general maritime law in 1903 in The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. The doctrine imposed a species of liability without fault on the part of the ship owner. Seas Shipping Co. Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) rejected the notion that the ship owner's duty to furnish a seaworthy vessel extended only to seamen employed directly by him on the vessel."[13]
An owner's duty to provide a seaworthy vessel is a nondelegable liability without fault and is independent of the Jones Act duty to exercise reasonable care. Boudoin v. Lykes Brothers S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955); Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed.2d 1099 (1946); Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944); Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).
No warranty of seaworthiness is owed to a vessel's visitors or passengers but it is owed to all members of a ship's company working on board. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Gibboney v. Wright, 517 F.2d 1054 (5th Cir., 1975).[14] "[T]he seaworthiness remedy remains available to Sieracki seamen not covered by the Act [the LHWCA]. Burks v. American River Transport Co., 679 F.2d 69 (5th Cir., 1982); Aparicio v. Swan Lake, 643 F.2d 1109 (5th Cir., 1981)."[15] The Jones Act did not preempt other admiralty remedies. In re Cambria Steamship Co., 353 F.Supp. 691 (N.D.Ohio, 1973), affirmed 505 F.2d 517 (6th Cir., 1974), cert. den. 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975).
Unseaworthiness liability is completely divorced from negligence concepts. Waldron v. Moore-McCormack Lines, 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967); Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Morton v. Berman Enterprises, Inc., 508 F.Supp. 342 (E.D.N.Y.1981).
Since pleasure craft owners enjoy the benefits of limitation of liability,[16] it is logical that they should, conversely, owe a warranty of seaworthiness to those working on board, either voluntarily or as employees.
A factual finding of unseaworthiness by the trier of fact is reviewed under "the clearly erroneous standard". Parks v. Dowell Div. of Dow Chemical Corp., 712 F.2d 154 (5th Cir., 1983); Consolidated Grain & Barge Co. v. Marcona Conveyor, 716 F.2d 1077 (5th Cir., 1983); Transorient Navigators Co., S.A. v. M/S Southwind, 714 F.2d 1358 (5th Cir., 1983).
The trial court correctly held that this shrimp boat was unseaworthy. It had no motive power, an inadequate anchor and a defective winch. The warranty of seaworthiness attached to the winch because that appurtenance was used in the primary function of the vessel, netting shrimp. Mahnich v. Southern S.S. Company, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944). This vessel was unseaworthy as a matter of law. See Martinez v. United States, 705 F.2d 658 (2d Cir., 1983); Gibbs v. Kiesel, 382 F.2d 917 (5th Cir., 1967).

CONTRIBUTORY NEGLIGENCE
To establish contributory negligence in a maritime setting there must be *1388 evidence of a negligent act or omission by plaintiff "other than his knowledgeable acceptance of a dangerous condition." Furka v. Great Lakes Dredge & Dock Co., Inc., 755 F.2d 1085 at 1090 (4th Cir., 1985). That was primarily what was proved here: Griffin knowingly accepted the dangerous condition of the winch as a recognized hazard of shrimping. Griffin was in no way responsible for the fact that the shrimp boat's engine failed, creating an emergency situation.
The trial court concluded that plaintiff contributed to his own injury stating:
"(1) He was an experienced hand. He was familiar with this type boat and every phase of its operation. (2) All others aboard deferred to his experience. All aboard, including the ship owner who was personally present, heeded his instructions.[17] (3) He neglected to protect himself from an obvious hazard. He knew the exposed winch with no guide was dangerous. He, himself, had installed the cable." Tr. 147, 148 (footnotes omitted).[18]
These findings are very similar to those made by the trier of fact in Sessler v. Allied Towing Corp., 538 F.2d 630 (4th Cir., 1976) where the court of appeal reversed, noting that plaintiff's conduct was properly characterized as assumption of the risk, not contributory negligence. Moreover, the trial court overlooked the fact that this ship was in extremis. Conduct in an emergency is not judged by the standard applied in ordinary situations. See the discussion of the rescue doctrine in Furka v. Great Lakes Dredge & Dock Co., Inc., 755 F.2d 1085 (4th Cir., 1985).
The shrimp net was anchoring the boat which was a hundred or a hundred and fifty feet away from the rocks on shore: the seas were choppy with one and a half to two and a half foot waves. Another boat was coming to the rescue of the shrimp vessel and Griffin had to haul in the net so that the other boat could tow them in to shore. The only way to bring in the net was with the winch. Although he knew the winch was dangerous, Griffin had no other available choice.[19] Compare Peymann v. Perini Corp., 507 F.2d 1318 (1st Cir., 1974), cert. den. 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975). Griffin had never before had an accident with a winch or hoist and he was being extremely careful.[20] Plaintiff could not have refused to operate the winch under the circumstances. He was in an awkward position, in close quarters, and the boat was rocking. The basic cause of the vessel's precarious position was the failure of the motor. The boat was clearly unseaworthy for lack of motive power and Griffin had absolutely nothing to do with the engine failure. He "never did mess with his [LeCompte's] motor."[21] The engine had broken down almost every time they went out.[22] The trial court erred in finding Griffin eighty percent at fault when he was doing his best to save the boat.
The implication of the trial court's findings is that plaintiff assumed the risk *1389 of the accident. However, assumption of the risk is not a defense in maritime unseaworthiness cases. Smith v. United States, 336 F.2d 165 (4th Cir., 1964). "A slip of the hand's grip does not necessarily denote negligence...." 336 F.2d at 169. Sessler v. Allied Towing Corp., 538 F.2d 630 (4th Cir., 1976); Furka, supra. "[U]nless great care be taken, ... rights will be sacrificed by simply charging him with assumption of the risk under another name." Schlemmer v. Buffalo, Rochester & Pittsburg Ry., 205 U.S. 1 at 12, 13, 27 S.Ct. 407 at 409, 51 L.Ed. 681 at 686 (1907).
Griffin admitted that the cable was put on the winch at his suggestion, and he knew the winch was dangerous. On a ninety-three foot boat where Griffin once worked there was a safe winch with a protective railing, but this boat was only twenty feet long. According to Griffin, a safety guard on a shrimp boat winch is a rare exception. In over forty years of shrimping, he had encountered only the one.
Carl LeCompte, Jr., said "a dog"[23] should have been on the winch and he did not want to go shrimping without one. A dog operates as a brake on the winch. However, his father and father-in-law talked him into the trip when Griffin convinced him that the winch could be jammed with a two by four in place of a "dog".
Contributory negligence or victim fault is conduct by the plaintiff which is a legal cause of the harm suffered and consists of conduct below the standard to which one should conform. Contributory negligence is not a defense to unseaworthiness, but it can operate to reduce plaintiff's recovery. Although Griffin and the elder LeCompte should not have insisted on this trip in the absence of a dog or brake on the winch, there is no evidence that the absence of the dog or brake had any causal connection with the injury to Griffin's hand. However, Griffin was apparently the only one on board who knew that the winch was dangerous without a safety guard. According to young LeCompte, the owner, he was not aware of this until after the accident occurred. The trial court could reasonably have found that Griffin was one-third at fault in not advising LeCompte that the winch needed a safety guard.

QUANTUM OF DAMAGES
Because of a childhood injury to his right hand, Griffin uses his left as his dominant hand. Dr. Cecil W. Clark said that Griffin had been his patient for over twenty-five years, when he sustained this crushing injury to the left hand. Clark felt plastic surgery was required and he referred Griffin to a specialist, Dr. Dowd. Dr. Clark testified that Griffin has a twenty percent permanent disability of the left hand and has been in several times for pain and swelling in his hand. As a result of the trauma, the lining of the joints in his hand is inflamed. The ligaments and bursa of the hand are traumatized. The condition will get worse with age and Griffin is unable to take aspirin and many other pain medications because of severe asthma.
Dr. James G. Dowd, Jr., testified that plaintiff had severe soft tissue injury to his left hand with multiple contusions and abrasions. He later developed arthritic problems in the hand and persistent chronic swelling in the joints of the second and third digits with some decreased sensation in the third finger. Dr. Dowd estimated that Griffin has a nine to ten percent permanent partial disability of the entire hand and wrist.
The trial court did not abuse its "much discretion" in fixing Griffin's damages. LSA-C.C. art. 1934(3).

CONCLUSION
The court of appeal erred in finding that Griffin was not working in the service of this ship and was not entitled to a warranty of seaworthiness. The trial court correctly held that plaintiff was a seaman entitled to a warranty of seaworthiness but was clearly wrong in finding him eighty percent at fault. Therefore, the trial court judgment awarding plaintiff total damages of $42,149.70 *1390 will be reinstated and reduced by one-third for Griffin's comparative fault.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed. The judgment of the trial court is reinstated as amended to reduce the award by one-third.
COURT OF APPEAL JUDGMENT REVERSED; TRIAL COURT JUDGMENT AMENDED AND AFFIRMED AS AMENDED.
DENNIS, J., concurs except that he feels the plaintiff's negligence was at least one-half of the total fault and should have his recovery reduced by one-half.
BLANCHE, J., dissents and assigns reasons.
BLANCHE, Justice (dissenting).
The majority opinion sets forth a scholarly review of the legal principles of maritime law, but presents an unrealistic application of the law to the facts of the case.
We do not have a commercial venture in shrimping in this case. We have the plaintiff, an experienced shrimper, out on a recreational fishing trip, in a small aluminum boat with his son-in-law, the defendant, and his son-in-law's father on a Saturday morning fishing trip to catch the son-in-law's father a "mess of shrimp" to take home after his visit. The father-in-law was not a commercial shrimper and his son-in-law who was helping him rig his shrimp trawl and then they took the boat on a test run.
Any boat that can pull a 16 foot trawl is capable of catching shrimp and while trawling for shrimp may be deemed a commercial venture, it definitely was not in this case. Neither is "sharing the catch" of any significance in the case. "Sharing the catch" is the reason weekend fishermen and shrimpers go fishing or shrimping. Nevertheless, these shrimpers were not even going to share the catch as their purpose was to catch the father-in-law a "mess of shrimp".
The plaintiff was not in any type of "service" on a "shrimp boat". He was helping his family catch shrimp on his son-in-law's personal rig that had the capability of catching shrimp in commercial quantities, but to label the venture as being in the slightest a commercial venture is "manifestly erroneous" and "clearly wrong".
In this writer's view, the decision is far reaching and would be applicable to weekend fishing for any type of fish which have commercial value. Thus fishing for speckle trout, a fish of commercial value, may likewise be termed a commercial venture when all share in the catch and contribute to the service of the fishing boat on navigable waterways.
This writer respectfully dissents being of the opinion that the majority opinion does an injustice to the history and purpose of the maritime law.
NOTES
[1] P-14, Hospital Record.
[2] Tr. 150: trial court's reasons for judgment.
[3] LeCompte and his wife are now legally separated.
[4] Tr. 180.
[5] A member of a fishing crew working on shares is a seaman. Domandich v. Doratich, 5 P.2d 310, 165 Wash. 315 (1931).
[6] "We went out to make a drag, see how it worked." (Tr. 296) The owner intended to give any shrimp they caught to his father, Carl LeCompte, Sr., who was on the boat, but they would have sold the shrimp if they had caught enough. (Tr. 268-269)
[7] 46 U.S.C. § 688.
[8] The confusion is apparent in one self-contradictory sentence: "Although Sieracki, supra, explicitly held that there need be no employer/employee relationship between the shipowner and the injured party, the holding did not nullify the importance of the existence of some employment relationship in determining if an injured party is owed the warranty of seaworthiness." 459 So.2d at 210.

This confusion is also apparent in the court's analysis of In Re Read's Petition, 224 F.Supp. 241 (S.D.Fla.1963). Even though unpaid, the Read claimant was held to be a Jones Act seaman, because there was a master-servant relationship. It was therefore "unnecessary to pursue his alternate contention that in any event he was lawfully aboard the vessel for purposes not inimical to the owners' legitimate interests. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550." 224 F.Supp. at 247. The Read court did not reach the issue posed here.
[9] Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1950), quoting from Seas Shipping Co. v. Sieracki, supra, footnote 9 of Kermarec.
[10] Of course, maritime activity need not be commercial for uniform rules of conduct to apply to operations of vessels on navigable waters. Foremost Insurance Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). Admiralty jurisdiction extends to pleasure boating, partly because of the inherent difficulty, exemplified here, of drawing a line of demarcation when a vessel is used for both business and pleasure. Foremost supra. Plaintiff should not be worse off if he were shrimping for pleasure. Oliver by Oliver v. Hardesty, 745 F.2d 317 (4th Cir., 1984).
[11] 448 F.Supp. at 745.
[12] 448 F.Supp. at 745.
[13] Woessner v. Johns-Manville Sales Corp., 757 F.2d 634 at 640, footnote 4 (5th Cir., 1985).
[14] Considerable criticism has been directed at the lack of a seaworthiness warranty for ship passengers and social guests. See Gibboney v. Wright, 517 F.2d 1054 (5th Cir., 1975) and Bacon v. Bunting, 534 F.Supp. 412 (D.Md.1982).
[15] Woessner v. Johns-Manville Sales Corp., 757 F.2d 634 at 642, footnote 5 (5th Cir., 1985).
[16] Complaint of Brown, 536 F.Supp. 750 (N.D. Ohio 1982).
[17] No surrender of control short of a valid bareboat charter will absolve an owner of liability for unseaworthiness. Guzman v. Pichirilo, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962); Baker v. Raymond Intern., Inc., 656 F.2d 173 (5th Cir., 1981), cert. den. 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982); Wheatley v. Gladden, 660 F.2d 1024 (4th Cir., 1981). Any control over the boat's operations by Griffin could not affect LeCompte's liability for the boat's unseaworthy condition. Moreover, young LeCompte was initially piloting the boat.
[18] In fact, according to owner LeCompte: "[W]e put on the cable and the boom, me and my father-in-law and my father, put the cable on and put the boom and hooked it up to the doors and this and that. So all three of us were involved in putting the cable on and the boom." (P-15, LeCompte depo., p. 7) "It was me and my father-in-law and my father. We went there early that morning. It was all three of us putting the cable on." (Tr. 294)
[19] Griffin said: "That's the risk you take when you're shrimping." (Tr. 284)
[20] See Hubbard v. Faros Fisheries, Inc., 626 F.2d 196 (1st Cir., 1980) which involved a malfunction in the winch used to retrieve the cable from which the fishing nets were suspended.
[21] Tr. 287.
[22] The boat subsequently sank.
[23] Tr. 294.