KLIEBERT, Judge.
James E. Champagne, plaintiff, takes this appeal from the granting of a motion for summary judgment dismissing his claim for personal injuries and damages against Continental Reserve Elevator Corporation (Continental) and its Jones Act insurer, Eagle Star Insurance Company of America (Eagle) under the Jones Act (46 U.S.C. § 688) and the general maritime law, and Section 5(b) of the LSHWCA (33 U.S.C. 901 et seq.).
In his reasons for judgment the trial judge reached the following conclusion as to the nature of the structure on which plaintiff was working at the time of his injury:
“Based on plaintiff's deposition, and the affidavit of O.J. Mabile, the court finds that there are no contested issues of material fact as to the nature and purpose of the cover station. It consists of two barges lashed together to form a work platform. The barges more or less permanently moored to the bank of the river by cables, and further fixed in place by two spuds which run through the *883 deck and hull, and into the river bed. A crane is mounted on one of the barges. The function of this structure is to remove covers from grain barges by means of the crane, and stack them on the other barge while the grain barges are being loaded or unloaded. The barges are without power or navigational lights. They are not used to transport men, cargo, or equipment from place to place.”
Based on that finding, the trial judge then reached the following legal conclusion:
“On this showing the court can only conclude that as a matter of law this structure is not a ‘vessel’ as that term is applied in Jones Act or general maritime law. Bernard v. Binnings Constr. Co., Inc., 741 F.2d 824 (5th Cir.1984); Cook v. Belden Concrete Products, Inc., 472 F.2d 999 (5th Cir.1973); Leonard v. Exxon Corp., 581 F.2d 522 (5th Cir.1978). Because plaintiff was thus not employed on a ‘vessel’ he has no action under either the Jones Act or general maritime law, and defendants are therefore entitled to summary judgment as a matter of law.”
From our review of the record we cannot say the trial judge erred in his findings as to the nature and purpose of the structure. Moreover, based on our understanding of the applicable law, we cannot say the trial judge erred in his application thereof. Hence, for the reasons hereafter stated, we affirm his decision.
The Jones Act requirement for seaman’s status is distinct from the test for seaman’s status under general maritime law. To qualify as a seaman under the Jones Act, one must be permanently assigned to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or perform a substantial part of his work on the vessel, and the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.’ Offshore Company v. Robison, 266 F.2d 769 (5th Cir.1959); Barrett v. Chevron, U.S.A., Inc., et al, 781 F.2d 1067 (5th Cir.1986) (en banc). Recovery under the general maritime law for unseaworthiness requires either crew member status or injury aboard a vessel while doing a seaman’s work. Powers v. Bethlehem Steel Corp., 477 F.2d 643 (1st Cir.1973) rehearing denied 483 F.2d 963, cert. denied 414 U.S. 856, 94 S.Ct. 160, 38 L.Ed.2d 106; Griffin v. LeCompte, 471 So.2d 1382 (La.1985). Under 33 U.S.C. § 905(b) a person otherwise covered under the LSHWCA may bring a tort action against a vessel if he was injured through the negligence of the vessel. Thus, to recover under the Jones Act, the general maritime law, or 33 U.S.C. § 905(b) a plaintiff must have some connexity to a “vessel” and therein lies the heart of the issue raised on the appeal.
The question of seaman status under both the general maritime law and the Jones Act is one of fact, and is ordinarily reserved for the fact finder. See Waguespack v. Aetna Life & Casualty Company, 795 F.2d 523 (5th Cir.1986): Griffin, supra. However, in Waguespack, supra, at 526, the court stated:
“This court’s recent en banc decision in Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067 (5th Cir.1986) disposes of two of Waguespack’s contentions. First, Barrett states that although the seaman status determination is an inherently factual question, it may be determined by summary judgment in the appropriate situation. ‘[W]here the facts establish beyond question as a matter of law [the lack of seaman status], ... a court ... may, in the proper case, hold that there is no reasonable evidentiary basis to support a jury finding that the injured person is a seaman_’ Guidry v. Continental Oil Co., 640 F.2d 523, 529 (5th Cir.) cert. denied, 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981), quoted in Barrett, 781 F.2d at 1074.”
The federal standard does not appear to be any different than that set forth in La.C. C.P. art. 966 and the jurisprudence there *884 under, which provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law.
The federal district courts have not hesitated to issue summary judgment where the facts establish beyond question that there is no reasonable evidentiary basis to support a jury finding that the injured person is a seaman. Waguespack, supra, presented a factual scenario very similar to the present one, as shown by the following excerpt:
“Waguespack was employed by Peavey in 1979 as a laborer, but shortly afterward began work as a ‘bargeman.’ His work consisted of removing the covers of grain barges after they entered the unloading slip, and replacing those covers once the grain had been removed by a mechanical arm. To facilitate the unloading process, floating work platforms were placed in the slip just ahead of and just behind each grain barge. The grain barge covers were stored on the work platforms during the unloading process. They were lifted and moved from the barges to the work platform by an overhead gantry system. It was Wagues-pack’s responsibility to secure hooks at the end of lines connected to the gantry by placing hooks into the eyeholes on the grain covers. The bargemen at Peavey worked eight- or twelve-hour shifts and did not sleep or eat aboard the barges or work platforms. At no time did Wagues-pack ever work as a deckhand or tug pilot for Peavey, nor did he ever participate in the navigation of barges on the Mississippi River. With the exception of the five times in four years when he rode aboard a tug to go inspect the cargo of a barge awaiting clearance to dock, his sole contact with barges came in the course of his above-described duties as a bargeman. The grain barges unloaded at the Peavey facility are owned by various barge lines, including a subsidiary of
On January 5, 1981, Waguespack was attempting to secure the gantry hook to a barge cover on a barge owned by ACBL, when the cover shifted and fell into the hold of the barge. He was thrown on his side and rolled down the cover, landing against the side of the barge at its bottom.” (795 F.2d 524-25)
In affirming the district court’s award of summary judgment in favor of Peavey on Waguespack’s Jones Act claim the court stated:
“[5] If Waguespack is to claim seaman status, then, he must have been the member of the crew of the small floating tender platforms that were .placed in the slip just ahead of and behind each grain barge. Each platform’s dimensions were about 35 feet by 40 feet; with the exception of a monthly ‘housekeeping’ chore where a work barge was used to carry debris to the Peavey yard, the platform was permanently located in a slip at the grain terminal facility; and it was used almost exclusively to facilitate the unloading of cargo from the grain barges by serving as a storage point for the covers and the work bargemen’s equipment. The work platform is not self propelled, it was not designed to carry goods or passengers, it had neither navigation lights nor conventional navigational equipment, and there were no crew quarters. The structure was essentially a work platform rather than a vehicle of commerce.
Several opinions of this court have considered whether a floating work platform could be a ‘vessel’ for Jones Act purposes. In Cook v. Belden Concrete Products, Inc., 472 F.2d 999 (5th Cir.), cert. denied, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973), it was held that a flat-deck barge which was used by Bel-den employees to fabricate concrete barges and which was not designed for transportation of passengers, cargo, or equipment from place to place across navigable waters was not a vessel. In Leonard v. Exxon Corp., 581 F.2d 522 (5th Cir.1978), cert. denied, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 397 (1979), the *885 court held that four work barges used as a construction platform which were neither designed for navigation nor engaged in navigation at the time of the accident were not vessels. Finally, and presenting the closest analogy to this case, in Bernard v. Binnings Construction Co., Inc., 741 F.2d 824 (5th Cir.1984), this court found that a work punt, a small raft from which the employee broke cement and guided sheet pilings, was not a vessel. Although the work punt frequently moved around a work area, it functioned primarily as a work platform. The opinion contains an extensive discussion of numerous cases, in this circuit and others, which have denied vessel status to this type of platform. These cases convince us that the ‘work barges’ upon which Waguespack conducted part of his job duties are not, as a matter of law, comprehensible within the Jones Act definition of a vessel.” (795 F.2d 526-27)
We find the present case to be indistinguishable from Waguespack and the cases cited therein. The undisputed facts show that the cover station functioned primarily as a work platform which, as a matter of law, is not a “vessel” as contemplated by the Jones Act. The affidavit submitted by plaintiff wherein a co-employee, Michael Cook, identified the cover station as a “special purpose barge” is conclu-sional rather than factual in nature and is refuted by the case law. Plaintiff cites this court to no jurisprudence which indicates that the definition of “vessel” under the géneral maritime law or 33 U.S.C. § 905(b) is more expansive than the Jones Act definition. Indeed, in White v. Valley Line Co., 736 F.2d 304 (5th Cir.1984) the court held that the terms “seaman” and “a member of a crew of any vessel,” as used in the Jones Act and the LSHWCA, are interchangeable and the criteria for establishing each are the same.
In the absence of some connexity to a “vessel” plaintiff has no remedy under the Jones Act, the general maritime law, or 33 U.S.C. § 905(b) for his injuries. Accordingly, we discern no error of law on the part of the trial court in granting summary judgment in favor of the defendants on the aforementioned claims. The judgment of the trial court is affirmed. All costs of this appeal are to be borne by the appellant.
AFFIEMED.